## GRIFFITH *v.* SCHEUNGRAB

[No. 85, September Term, 1958.]

28

*Decided December 24, 1958.*

*Motion for modification of decree filed January 22, 1959, granted February 10, 1959, and opinion modified.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Malcolm W. Houston* for the appellant.

*Edward J. Bagley,* with whom was *Ernest A. Loveless, Jr.,* on the brief, for the appellee.

HAMMOND, J., delivered the opinion of the Court.

In July, 1956, Col. Griffith, the appellant, entered into a contract to buy the newly constructed residence known as 5810 Winston Street, Oxon Hill, Prince George's County, from the builder, Mildred C. Scheungrab, the appellee. Soon after, he moved into the property under a special occupancy agreement and has lived there since. Not being able to get an FHA mortgage as the contract contemplated if the sale were to go through, Col. Griffith has never settled for the property. In June, 1957, Mrs. Scheungrab filed a bill for

specific performance, and Col. Griffith filed a cross-claim for the return of the deposits he had made. After trial the chancellor decreed specific performance.

The purchase price was $19,100.00 and the contract provided that "The purchaser is to place a first deed of trust secured by the premises of Seventeen thousand one hundred and no/100 (F.H.A. Loan, 25 yr. maturity under Section 222 of Public Law 560, 83rd Congress, Approved Aug. 2, 1954) Dollars ,($17,100.00), bearing interest at the rate of 4½ per cent per annum, payable approx. $95.00 monthly including interest and principal." It was provided that "Purchaser agrees to pay $20.00 for F.H.A. appraisal * * *. De- posit refundable if F.H.A. (Sec. 222) loan unobtainable." A further term was: "Purchaser and seller agree to pay 1% each for placement of loan."

The record shows constant repetitions of objections to verbal and written evidence offered on behalf of Col. Griffith in almost each case with long colloquies between counsel and the chancellor. It is difficult to tell how much was admitted and how much rejected, but from what did come in and from what was proffered and should, in our opinion, have come in, the following facts and circumstances appear to be pertinent and significant.

Two days after the execution of the contract, Col. Griffith was told by the mortgage company, to whom he was sent by Mrs. Scheungarb's agent, that it would be necessary to execute an amendment to the contract in the form shown him, if FHA financing were to be procured. He signed the agreement and, later, Mrs. Scheungrab signed it. It read: "not- withstanding any other provisions of this contract, the purchaser shall not be obligated to complete the purchase of the property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise unless the seller has delivered to the purchaser a written statement issued by the Federal Housing Commissioner setting forth the appraised value of the property for mortgage insurance purposes of not less than $19,500, which statement the seller hereby agrees to deliver to the purchaser promptly after such appraised value statement is made available to the seller." The exe-

cution of this amendment was necessary under the provisions of U. S. C. A., Title 12, *Banks and Banking,* Sec. 1715q, and the requirements of the Federal Housing Commissioner under regulations implementing the statute. The statute reads: "The Commissioner is authorized and directed to require that, in connection with any property upon which there is located a dwelling designed principally for a single-family residence or a two-family residence and which is approved for mortgage insurance under section 1709 or 1715e of this title with respect to any property or project of a corporation or trust of the character described in paragraph (2) of subsection (a) of section 1715e of this title, or sections 1715k-1715m, or 1750b of this title, the seller or builder or such other person as may be designated by the Commissioner shall agree to deliver, prior to the sale of the property, to the person purchasing such dwelling for his own occupancy, a written statement setting forth the amount of the appraised value of the property as determined by the Commissioner." Sec. 1709 was a part of Sec. 222 of Public Law 560, 83rd Congress, as was Sec. 1715m, which deals with mortgage insurance for servicemen and was the provision particularly applicable to Col. Griffith.

The Federal Housing Commissioner informed all offices and employees of the Administration, in a directive implementing Sec. 1715q, that the "intent and purpose" of Congress in enacting the statute was to give "a prospective purchaser of a property informed judgment as to its reasonable value." The directive went on to say that in order "to prevent rejection of cases in which sales contracts were executed prior to the filing of application for mortgage insurance, language was provided in FHA Form 2562 which could be used in amending the sales contract * * *. It is obvious, of course, that unless a reasonable dollar amount is used in the amendatory language the purchaser does not have the protection intended by the legislation, which is to permit his withdrawal from the contract in the event the FHA valuation is not equal to the amount set forth in the clause." Further provisions of the directive were that the FHA commitment shall contain "a condition requiring that the Form 2562 be

signed by the purchaser and be submitted at closing as evidence that the purchaser has received the statement of FHA appraisal * * *. In all cases involving an amended sales contract * * * the dollar amount inserted in the blank space must represent a reasonable estimate of the value of the property arrived at by the seller and the purchaser and shall, in no event, be less than an amount which would support the amount of the proposed mortgage."

From the testimony that the supervisor of the FHA Loan Examiners gave, or was prepared and should have been permitted to give, it appears that the guarantee sought by Col. Griffith could not and would not be given by the agency until Form 2562 was properly executed—that its execution was an absolute condition precedent to the guarantee and the making of the loan. Form 2562 is in two parts: the first is a certification by the FHA that its appraised value of the property is a specified amount; second is the affirmation of the purchaser as to one of three alternatives—(1) that the house was constructed for his own occupancy; or (2) that the FHA appraisal was given him before he signed the contract to purchase the house; or (3) that although the FHA appraisal in part one was not shown him before he signed the contract, the final contract contained the "following language." There is then set out the wording of the amendment signed by Col. Griffith and Mrs. Scheungrab, that the purchaser need not complete the purchase unless the seller delivered to him a written appraisal of the subject property for the mortgage insurance in a specified amount.

It is conceded that Mrs. Scheungrab never procured or delivered to Col. Griffith the appraisal in the amount of $19,500 specified in the amendment or, indeed, in any amount.

Mrs. Scheungrab says that she signed the amendment only as a "courtesy" to Col. Griffith so that he could "get the FHA loan", but that she never intended to amend the original contract. The amendment was offered in evidence six times and each time rejected by the chancellor, apparently on the ground that there was no consideration for it and that it was ineffective as to the terms of the original contract. It should have been admitted. It was, at the least, recognition

by Mrs. Scheungrab that she had an obligation as a promisee under the original contract to do whatever was necessary to help the promisor obtain the mortgage, since the contract made the completion of the purchase turn on the securing of the FHA financing.

Seller and purchaser had agreed that if a specified FHA mortgage could not be obtained, the purchaser's deposit was "refundable". We construe this to mean, in a few words what the amendment said in more, that in such case "the purchaser shall not be obligated to complete the purchase of the property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise." Since Col. Griffith had not been shown any appraisal before he signed the contract, under the law the FHA mortgage could not have been obtained without the amendment to the contract; and Mrs. Scheungrab clearly would not be entitled to specific performance of the original contract under its own terms.[1] It is a familiar principle often applied in the cases that "* * * the laws which subsist at the time and place of making a contract enter into and form a part of it, as if they were expressly referred to or incorporated in its terms; and this rule embraces alike those which affect its validity, construction, discharge, and enforcement." *Brown v. Smart,* 69 Md. 320, 330; *Globe Slicing Machine Co., Inc. v. Murphy,* 161 Md. 667, 671. It is not necessary to determine how far this broad statement would be applicable and controlling in various contexts and situations. See 3 Corbin, *Contracts,* Sec. 551. Here the contract of the parties left no doubt that they contemplated compliance by both with the pertinent requirements of the FHA as to mortgage guarantees of loans to

---

1. There is another reason why Mrs. Scheungrab could not prevail in specific performance if she relies solely on the original contract. The chancellor found as a fact—we think rightly—that a 4½% FHA mortgage was not obtainable in the Washington area, during the times here pertinent, for a 2% finder's fee. This being so, the contemplated mortgage was not obtainable and Col. Griffith was excused from completion of the purchase if he so elected. Despite his finding of fact, the chancellor held that Col. Griffith nevertheless had an obligation to obtain the mortgage. In this we think he was clearly wrong.

servicemen. That these requirements included the necessary appraisal is evidenced by the contract provision that "Purchaser agrees to pay $20.00 for F.H.A. appraisal."

Because the signing of the amendment by Mrs. Scheungrab was a condition precedent to the obtaining of the FHA financing and completion of the sale, there was not only manifest consideration moving to her for its execution but a clear, although implied, duty on her under the original contract to execute it.

Where the cooperation of a promisee is necessary for the performance of a promise, there is a condition implied in fact that the cooperation will be given. 3 Williston, *Contracts,* Rev. Ed., Sec. 887A. In *Vanadium Corp. of America v. Fidelity & Deposit Co. of Maryland,* 159 F. 2d 105, 108 (2d Cir., 1947), the vendor received the price for the sale of Indian lands, giving bond as surety for repayment if the sale should be disapproved by the Secretary of the Interior. The vendee later so acted as to prevent approval by the Secretary. It was held that the surety was discharged. See also *Black v. Woodrow,* 39 Md. 194, 215-216, and *Milske v. Steiner Mantel Co.,* 103 Md. 235, 249-250. Mrs. Scheungrab has never furnished the "written statement issued by the Federal Housing Commissioner setting forth the appraised value of the property for mortgage insurance purposes of not less than $19,500", as she was required to do by implication in the original contract, and by express agreement in the amendment to the contract; and, therefore, the Colonel was not obliged to complete the purchase. Having failed to perform, Mrs. Scheungrab is not in a position, by specific performance or otherwise, to hold Col. Griffith to the terms of the contract. Where a contractual duty is subject to a condition precedent, whether express or implied, there is no duty of performance and there can be no breach by nonperformance until the condition precedent is either performed or excused. An unexcused failure to perform makes it impossible for a breach to occur and, therefore, no remedy for enforcement is available to the delinquent one. 6 Corbin, *Contracts,* Secs. 1252, 1264, 1266; *Kahn v. Janowski,* 191 Md. 279, 286; *Foster-Porter Enterprises, Inc. v.*

*De Mare,* 198 Md. 20, 36; *Springer v. Korotki,* 215 Md. 310. Mrs. Scheungrab, not having performed an obligation placed upon her by her agreement with Col. Griffith, is in default and may not have specific performance. "* * * a decree for specific performance will not be granted unless conditions precedent, express, implied, or constructive, have all occurred or been performed." 5 Corbin, *op. cit.,* Sec. 1175. Restatement, *Contracts,* Sec. 374, Illustration 1, p. 688; Pomeroy, *Specific Performance of Contracts,* 3rd Ed., Sec. 334. See also *Lucier v. Williams* (Mass.), 82 N. E. 2d 808; *Roux v. Stassi* (La.), 74 So. 2d 161; *Berger v. Weightman* (Pa.), 102 A. 2d 161, 164; *Horan v. Blowitz* (Ill.), 148 N. E. 2d 445, 448.

Because Mrs. Scheungrab was in default in not providing the appraisal required by the FHA statute and regulations and the contract, she was not entitled to specific performance under the terms of the amended contract, and the decree appealed from must be reversed. The case will be remanded for the entry of a decree dismissing the bill and directing the return to Col. Griffith without interest of the deposit he made, less the rental payments due and unpaid, if any ($50.00 a month to the time of the decree and $150.00 a month thereafter under the decree). The occupancy agreement calling for rent of $50.00 a month obviously was based on the mutual premise that the contract of sale would go through and the part of the decree that directed payment of $150.00 a month pending the appeal was, in effect, a bond. Since we have decided that the contract of sale is unenforceable, we think the provision of the decree for a rental of $150.00 a month should stand.

> *Decree reversed, with costs, except as to so much as directs payment of $150.00 a month rental, and case remanded for entry of a decree not inconsistent with this opinion.*