Stacey G. NILSON, Plaintiff,

v.

HISTORIC INNS GROUP
LTD., Defendant.

Civ. No. AMD 95–2796.

United States District Court,
D. Maryland.

Nov. 1, 1995.

Gerard P. Martin, Martin, Junghans, Snyder & Bernstein, Baltimore, MD, for plaintiff.

Charles S. Fax, Shapiro & Olander, Baltimore, MD, for defendant.

## MEMORANDUM AND ORDER

DAVIS, District Judge.

Plaintiff, Stacey G. Nilson, worked as a banquet manager for the Defendant, Historic Inns Group Limited ("Historic Inns"), from December 1, 1993, until she was terminated on March 17, 1994. Upon Nilson's arrival, Joan Quimby, her predecessor as banquet manager, was promoted to the position of catering director. During the first few weeks of Nilson's employment, Quimby "was responsible for training [Nilson] in her duties as Banquet Manger, including weekly banquet payroll." Quimby Memo to File, Mem. in Supp. of Pl.'s Opp. to Df.'s Mot. for Summ. J. at Ex. F.

On March 17, 1994, Nilson was brought to the office of Joseph Holzman, the Defendant's food and beverage manager. Quimby was already there. Holzman informed Nilson that it had come to his attention that Nilson had altered the time on some of her subordinates' time cards. Although Holzman asked for an explanation from Nilson for the alterations, it appears from the record that Nilson was either unwilling or unable to offer any reasons for the alterations at that time. Holzman terminated her employment immediately.

Nilson instituted the present action claiming that the Defendant's true reason for terminating her was that she was pregnant. In a two-count complaint, Nilson alleges viola-

tions of both Title VII of the Civil Rights Act of 1964, specifically the Pregnancy Discrimination Act ("PDA"), 42 U.S.C. § 2000e(k), and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102 *et seq.* On January 13, 1995, this Court granted a joint motion stipulating to dismissal, with prejudice, of the ADA count of the complaint. Before the Court today is Defendant's Motion for Summary Judgment on the remaining PDA count.[1] This Court has jurisdiction pursuant to 28 U.S.C. § 1331. The parties' submissions have been considered, and no hearing is deemed necessary. Local Rule 105.6 (D.Md. 1995). As this Court has determined that there exists a dispute as to material facts, the Defendant's Motion for Summary Judgment shall be denied.

(i)

▉▉▉ A party moving for summary judgment is entitled to a grant of summary judgment only if no issues of material fact remain for the trier of fact to determine at trial. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Shealy v. Winston,* 929 F.2d 1009, 1012 (4th Cir.1991). A fact is material for purposes of summary judgment, if when applied to the substantive law, it affects the outcome of the litigation. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. Mere speculation by the nonmovant cannot stave off a properly supported motion for summary judgment. *See Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985). "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). *See Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512; *Shealy,* 929 F.2d at 1012. Furthermore, all permissible inferences must be drawn in the light most favorable to the non-moving party. *See Matsushita,* 475 U.S. at 587–88, 106 S.Ct. at 1356–57.

(ii)

▉▉▉ As the Plaintiff has not alleged any direct evidence of discrimination, in order to withstand the motion for summary judgment in the present case, she must present this Court with admissible evidence which establishes a *prima facie* case of discrimination on the basis of her pregnancy. *See St. Mary's Honor Center v. Hicks,* —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In particular, Nilson must demonstrate the following:

(1) That at the time in question she was indeed pregnant;

(2) That she was performing her position of banquet manager satisfactorily;

(3) That she was terminated from her position as banquet manager; and

(4) That after her termination, the position remained open or was filled by someone of comparable qualifications who was not pregnant.

*See St. Mary's,* —— U.S. at ——, 113 S.Ct. at 2747; *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *see also Carter v. Ball,* 33 F.3d 450, 458 (4th Cir.1994); *English v. Pabst Brewing Co.,* 828 F.2d 1047, 1051 (4th Cir.1987), *cert. denied,* 486 U.S. 1044, 108 S.Ct. 2037, 100 L.Ed.2d 621 (1988).

---

**1.** This Court wishes to draw both the Plaintiff's and the Defendant's counsel's attention to a matter which has caused this Court great frustration in considering the parties' submissions. Counsel submitted to this Court voluminous exhibits attached to their various motions, surely in the range of 400–600 pages. In addition, counsel correctly tabbed these exhibits using letters and numbers. Nonetheless, counsel for both parties did not consistently refer to their exhibits by letter/number. Apparently, counsel believe that this Court is possessed with a photographic memory. Unfortunately, this is not the case. As a result, each time this Court wanted to refer to one of the exhibits mentioned in the parties' memoranda, this Court had to consult the table of contents. Counsel are advised that this Court will not suffer this inconsiderate behavior again; it should never be repeated here or before any court, anywhere, at any time.

■ If Nilson successfully produces evidence establishing a *prima facie* case, a rebuttable presumption that Historic Inns has unlawfully discriminated on the basis of Nilson's pregnancy is created. *St. Mary's*, —— U.S. at ——, 113 S.Ct. at 2747; *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094. The burden then shifts to the Defendant to produce "an explanation to rebut the prima facie case— *i.e.,* the burden of 'producing evidence' that the adverse employment actions were taken 'for a legitimate, nondiscriminatory reason.'" *St. Mary's*, —— U.S. at ——, 113 S.Ct. at 2747 (quoting *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094). At this stage, the Defendant's proffered reason need not be credible; rather, it need only be facially legitimate and nondiscriminatory. *Id.,* —— U.S. at —— – ——, 113 S.Ct. at 2748–49. If the Defendant meets this burden, the presumption of unlawful discrimination falls away. *Id.* at ——, 113 S.Ct. at 2749. The burden of production would then return to the Plaintiff, and Nilson would be required to produce "competent evidence that the presumptively valid reasons for [her termination] were in fact a coverup for a ... discriminatory decision." *McDonnell Douglas*, 411 U.S. at 805, 93 S.Ct. at 1826.

### (iii)

Historic Inns argues, *inter alia*, that Nilson cannot produce a sufficient evidentiary basis to establish a *prima facie* case, because, it alleges, by altering her subordinates' time cards she was not performing her job satisfactorily. Drawing all permissible inferences in favor of Nilson, however, this Court finds that there remains a genuine dispute of material fact with respect to whether her alteration of the time cards was actually something she was trained and instructed to do as one of her responsibilities as banquet manager. Thus, this Court need look no further to determine that summary judgment is inappropriate in this case.

It is undisputed that Nilson was pregnant at the time of her termination. Moreover, her educational and employment background demonstrate her qualifications for the position,[2] and although the actual motivation behind her 90–day evaluation is in dispute, it appears to demonstrate that she was meeting or exceeding her job requirements just days before her termination. Mem. in Supp. of Pl.'s Opp. to Df.'s Mot. for Summ. J. at Ex. R. Moreover, Aaron Luna (a male), who ultimately replaced Nilson as banquet manager, had been originally passed over by the Defendant for that position because it was not believed that he was ready for such responsibility. In fact, the record reveals that he was not immediately chosen to succeed Nilson because doubts as to his abilities still lingered. Therefore, at first glance, it would appear that Nilson has established a *prima facie* case.

The Defendant argues, however, that Nilson was having trouble keeping her unit's payroll within budget. As a result, Historic Inns contends, Nilson was illegally altering time cards in order to reduce the number of hours that the employees under her supervision were paid. The employee manual, signed by Nilson, states unequivocally that "falsification of time records" and "[f]alsification or unauthorized alteration of any hotel record" are acts "which may be considered to be of such a serious nature that they will be grounds for immediate discharge...." Mem. in Supp. of Df.'s Mot. for Summ. J. at Ex. D. Therefore, according to the Defendant, Nilson's performance should not be deemed satisfactory for purposes of establishing a *prima facie* case.

Nilson does not dispute that she altered the employee time cards. Mem. in Supp. of Pl.'s Opp. to Df.'s Mot. for Summ. J. at 16. She contends, however, that when her employment began in December 1993, Quimby trained her to make time card alterations in the event that an employee had not punched

---

**2.** Nilson attended Johnson and Wales University, where she received an A.A. degree in Food and Beverage Management and a B.A. degree in Hotel and Restaurant Management. Nilson Dep. at 6. Prior to her employment with Historic Inns, Nilson had worked in a number of hotels and restaurants. Her prior positions included bartender, server, hostess and assistant banquet manager. *Id.* at 32–34. Moreover, Joan Quimby recommended that Nilson be hired. Quimby Dep. at 28. Quimby's "overall impression of her was positive, and [she] had no reason to think [Nilson] couldn't do the job." *Id.*

out when he stopped working for the day. At her deposition, Nilson explained as follows:

> [I]f somebody—an instance came up that [Joan Quimby] had known that somebody was hanging around. Two of the servers rode to work together, and one had punched out, they both punched out at the same time, and she knew that one was done an hour earlier. She showed me what to do if I needed to change their time cards. She said change the time and initial it.

Nilson Dep. at 77. Nilson also stated that she changed the time on the time cards if her employees "[e]ither ... have been there when they shouldn't be, or the time clock wasn't working, or you could not read a punch that they punched." *Id.* at 148. Moreover, at the time she was fired, Nilson contends that she asked specifically why these alterations had not been brought to her attention sooner if there was a problem.[3] *Id.* at 193. As for her inability to articulate her reasons for the alterations when questioned by Holzman at the time of her termination, Nilson maintains that she was overwhelmed. Mem. in Supp. of Pl.'s Opp. to Df.'s Mot. for Summ. J. at 11.[4]

Quimby explained that there were clearly times when it was proper to make alterations to a time card. She explained, for instance, that she would have altered an employee's time card "[i]f a mistake was made on the punch, if somebody punched a card that wasn't their card, if they forgot to clock in or out, if they have punched in on the wrong shift." Quimby Dep. at 91. Moreover, she stated that she had instructed Nilson to alter a clock in or clock out time to reflect the actual number of hours worked by an employee for payroll accuracy. *Id.* at 104. Nonetheless, she contended that she " '[n]ever ... instruct[ed Nilson] to change or alter the clock in or clock out times in order to reduce the number of hours worked.' " *Id.* at 103.

"[S]ummary judgment under Rule 56 ... may not be invoked where, as here, the [depositions of the principal witnesses] present conflicting versions of the facts which require credibility determinations." *Davis v. Zahradnick*, 600 F.2d 458, 460 (4th Cir.1979) (per curiam). *See also Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir.1986). Disposition of matters turning on credibility may only be determined by the trier of fact. In the instant case, determinations as to whether Nilson was satisfactorily performing her job, and whether her termination for altering time cards could be deemed pretextual, rely heavily on the relative credibility of Nilson and Quimby. Manifestly, a grant of summary judgment would be erroneous.

Accordingly, it is this 1st day of November 1995, by the United States District Court for the District of Maryland, ORDERED that Historic Inns Group Ltd.'s Motion for Summary Judgment BE, and it hereby IS, DENIED.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Memorandum and Order, by United States mail, upon the attorneys of record for the parties appearing in this case.

---

**3.** Historic Inns claims to have uncovered at least seven individual instances where Nilson altered her subordinates' time cards, dating back to January 16, 1994. Mem. in Supp. of Df.'s Mot. for Summ. J. at 12–14.

**4.** Furthermore, Nilson's inability to explain the alterations at the time appears to have been irrelevant to Holzman's decision to terminate her. Holzman had apparently decided prior to the final meeting between Nilson, Quimby and himself that "there would be no recourse but to let [Nilson] go." *See* Holzman Dep. at 115–16.