Natalie CARROLL

v.

**TOWN OF UNIVERSITY PARK, et al.**

Civil No. Y–96–1626.

United States District Court,
D. Maryland.

Aug. 11, 1997.

Mary Ann Ryan, Anna M. Coyle, and Ryan & Coyle, Laurel, MD, for Plaintiff.

Linda S. Woolf, Jennifer L. Huesman, and Goodell, DeVries, Leech & Gray, LLP, Baltimore, MD, for Defendants.

## MEMORANDUM OPINION

JOSEPH H. YOUNG, Senior District Judge.

This suit arises from the employment and termination of Natalie Carroll ("Carroll") as a police officer for the Town of University Park, Maryland. Carroll alleges that she was denied her right to procedural due process, her First Amendment rights, and her right to equal protection. She also alleges that she was discriminated against on the basis of her sex and retaliated against for pursuing charges of discrimination. After the close of discovery, Defendants moved for summary judgment.

### I. Facts

Carroll was hired as a police officer for the Town of University Park, Maryland ("Town"). Mayor Robert W. Werge ("Werge") confirmed the offer of employment by letter dated November 12, 1992. (Defs.' Ex. 7). On December 3, 1992, Carroll signed an Employment Agreement with the Town which required her to serve on probationary status "[f]or one year from the date of permanent employment." (Pl.'s Ex. C). She first reported for work on January 11, 1993 and attended the Police Academy from January 18 to May 21, 1993.

After completing her instruction at the Police Academy and assuming her responsibilities as an active duty officer, several instances occurred in which she is alleged to have acted improperly.

On December 20, 1994, Lieutenant Stephen S. Bacon ("Bacon"), who was Carroll's supervisor and the highest ranking member of the police department at the time,[1] completed Carroll's annual performance appraisal and recommended her termination to the Town Council. By Resolution 94–1, dated January 7, 1994, the Town Council decided to extend her probationary status for ninety (90) days from January 11, 1994. (Pl.'s Ex. V).

Sometime in December or early January,[2] the Town passed Resolution 93–20, which transferred authority for making police personnel and employment decisions from the Town Council to the Chief of Police. (Defs.' Ex. 5).

Carroll suffered an injury on the job on January 20, 1994 and remained on disability leave until she was released from her doctor's care on March 31, 1994.

On January 31, 1994, Carroll's attorney wrote a letter to the Town's attorney alleging that the extension of Carroll's probationary status violated the Law Enforcement Officers Bill of Rights ("LEOBR"), MD. ANN. CODE art. 27, §§ 727–734, and mentioning that her gender was improperly considered. (Pl.'s Ex. X). Carroll's attorney met with the Town's attorney on March 2, 1994, in an effort to resolve the matter. On March 15, 1994, Carroll's attorney wrote a letter to the Town's attorney advising her of Carroll's intent to file discrimination charges. (Pl.'s Ex. Z). The Town's attorney claims that she never received the March 15th letter.[3]

Sometime prior to March 31, 1994, Bacon was appointed acting Chief of Police. On March 31, 1994, Bacon signed a letter prepared by the Town's attorney terminating Carroll's employment with the Town. (Pl.'s Ex. 1). Mayor Werge apparently concurred

---

1. Chief of Police William Sahaydak resigned as chief in November 1993 after holding the post for approximately eleven months.

2. The copy of Resolution 93–20 attached to Defendants' Motion for Summary Judgment has a handwritten notation stating that it was introduced December 6, *1993* and passed January 3, *1993*. (Defs.' Ex. 5). Accordingly, it is unclear exactly when the Resolution was enacted, although it became effective January 23, 1994.

3. In her deposition, the Town's attorney points out that the March 15th letter was sent to the wrong address and her name was misspelled. (Defs.' Ex. 31). The Court notes that the January 31st letter, which the Town's attorney acknowledges receiving, was sent to the same address and spelled her name the same. (*Compare* Pl.'s Ex. X *with* Pl.'s Ex. Z).

with Bacon's decision to terminate Carroll's employment. Carroll received the letter on April 2, 1994.

On April 11, 1994, Carroll's attorney wrote a letter to newly appointed Chief of Police Richard Ashton ("Chief Ashton") requesting a hearing regarding Carroll's termination. (Pl.'s Ex. 2). By letter dated April 19, 1994, Chief Ashton refused Carroll's request for a hearing but agreed to meet with her. (Pl.'s Ex. Y part C). Subsequently, on April 22, 1994, Carroll's attorney wrote Chief Ashton indicating that Carroll had filed discrimination charges and seeking to set up a meeting. (Pl.'s Ex. Y part D). Chief Ashton responded by letter dated April 28, 1994, indicating that a meeting would be inappropriate in light of the filing of discrimination charges. (Pl.'s Ex. Y part E).

In a March 12, 1996 letter, the United States Equal Employment Opportunity Commission determined that "evidence obtained during the investigation does not establish a violation" of Title VII. Carroll filed the pending suit on May 24, 1996 against the Town, Bacon, and Werge alleging violations of her constitutional rights pursuant to 42 U.S.C. § 1983 (Count I), discrimination on the basis of sex in violation of Title VII (Count II), and retaliation for pursuing charges of discrimination in violation of Title VII (Count III). After the close of discovery, Defendants filed a Motion for Summary Judgment which has been fully briefed and is ripe for consideration. Also pending before the Court are Motions to Strike filed by Plaintiff and Defendants.

## II. *Defendants' Motion for Summary Judgment*

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Only disputes over facts that might affect the outcome of the litigation under governing law will preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be considered. *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

The mere existence of a scintilla of evidence in support of Plaintiff's case will be insufficient; there must be evidence on which the jury could reasonably find for the non-moving party, in this case Carroll. *Id.* at 252, 106 S.Ct. 2505. Plaintiff's evidence, however, is to be believed and all justifiable inferences are to be drawn in her favor. *Id.* at 255, 106 S.Ct. 2505 (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–159, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)).

### A. *§ 1983 Claim (Count I)*

Section 1983 of Title 42 provides in pertinent part that "[e]very person who, under color of [law] ... subjects ... any citizen ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable...." 42 U.S.C. § 1983. Carroll contends that the Defendants the Town, Bacon, and Werge acted under color of law to deprive her of her constitutionally protected property and liberty interests without due process, her First Amendment rights, or her right to equal protection.

#### 1. *Plaintiff's Right to Procedural Due Process*

To prevail on her § 1983 claim that she was denied procedural due process, Carroll must establish that she was deprived of a property or liberty interest protected under the Fourteenth Amendment. *See Cleveland Bd. of Ed. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Liberty and property are broad concepts "purposely left to gather meaning from experience...." *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 571, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) (quoting *National Ins. Co. v. Tidewater Transfer Co.,* 337 U.S. 582, 646, 69 S.Ct. 1173, 93 L.Ed. 1556 (1949) (Frankfurter, J., dissenting)).

Constitutionally protected property interests are not created by the Constitution; instead, they are defined by existing rules

that originate in an independent source such as state law. *Roth*, 408 U.S. at 577, 92 S.Ct. 2701. In the context of public employment, "[t]o have a property interest ... a person clearly must have more than an abstract need or desire for it. [Sh]e must have more than a unilateral expectation of it. [Sh]e must, instead, have a legitimate claim of entitlement to it." *Id.* Absent some special statutory entitlement, a public employee does not have a federally protected right to continued employment. *Perry v. Sinderman*, 408 U.S. 593, 602 n. 7 (1972).

The concept of liberty protected by the Constitution "denotes not merely freedom from bodily restraint, but also the right of the individual to contract, *to engage in any of the common occupations of life*, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized ... as essential to the orderly pursuit of happiness by free men." *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042 (1923) (emphasis added).

Carroll asserts that she was deprived of a cognizable property interest in her continued employment with the Town as well as certain generalized liberty interests. Her alleged deprivation of these constitutionally protected interests are discussed in turn below.

a. *Law Enforcement Officers Bill of Rights*

■ The Law Enforcement Officers Bill of Rights ("LEOBR") provides procedural protections to police officers, but it is generally not applicable to probationary officers. MD. ANN. CODE art 27, § 727(c). The Employment Agreement Carroll signed on December 3, 1993 requires her to serve as a probationary officer for "one year from the date of permanent employment." (Pl.'s Ex. C, ¶ 2).

Carroll argues that her permanent employment and, thus, her one-year probationary period began when she signed the Employment Agreement on December 3, 1993, even though she did not report for work until January 11, 1994. Thereupon, Carroll contends that her one-year probationary period ended December 3, 1994, and she had a

property interest in her continued employment created by LEOBR when the Town attempted to extend her probationary status for ninety (90) days in January 1994 and, subsequently, when she was terminated.

The Defendants counter that Carroll's probationary period did not begin until January 11, 1994, when she initially reported for work and, therefore, she was not subject to the protections of LEOBR and had no property interest in her continued employment.

The Court finds as a matter of law that Carroll's probationary period began when she reported for work on January 11, 1993, not when she signed the Employment Agreement on December 3, 1992. Accordingly, she was a probationary officer outside the protections of LEOBR during the entire time she was employed by the Town and had no property interest created by LEOBR in her continued employment by the Town.

b. *Town Resolution 94–1*

■ Town Resolution 94–1 extended Carroll's probationary period for ninety (90) days from January 11, 1994. (Pl.'s Ex. V). The Resolution called for her to complete special training in command and control and community policing, to participate in a ride along program of further on-street training, and to receive job related counseling. At the end of the 90–day period, the ranking officer of the Department was to re-evaluate her performance to determine whether to extend the probationary period or terminate her employment.

Carroll argues that the resolution created a property interest in continued employment during the entire 90–day period. She emphasizes that she never received special training or additional counseling. She also notes that she was terminated eleven (11) days before the end of the 90–day period without any formal re-evaluation of her performance.

The Defendants, on the other hand, argue that notwithstanding the language of the resolution, its practical effect was to extend Carroll's probationary period. Under the Employment Agreement, the Town had the discretion to terminate Carroll's employment

at any time. The Defendants reject Carroll's suggestion that she was entitled to an evaluation at the end of the 90–day period, arguing that any evaluation would have been performed by Bacon who testified he had no reason to change his earlier evaluation of her.

The Court holds as a matter of law that Town Resolution 94–1 did not create a property interest, but instead simply extended Carroll's probationary status under the Employment Agreement which permitted her termination at any time.

#### c. *Employment Agreement*

■ The Employment Agreement (Pl.'s Ex. C) subjected Carroll to a debt of $12,000 if she voluntarily terminated her employment or was terminated for cause within the first twenty-four (24) months following her certification as a police officer. The debt was reduced by $1,000 per month for each month served after her certification. Carroll was certified at the end of May 1993 and, thus, by the time she was terminated her debt had been reduced by $10,000.

Carroll argues that she had a legitimate expectation of continued employment, and, thus, a property interest in continued employment until the entire debt was eliminated. *See Griffith v. Scheungrab,* 219 Md. 27, 146 A.2d 864 (1958) (stating that when cooperation of a promisee is necessary for the performance of a promise there is an implied condition that cooperation will be given).

The Defendants emphasize that the Employment Agreement specifically states that "[e]xcept as required by [LEOBR] or other appropriate legislation, nothing herein shall limit the prerogative of the Town or its Chief of Police, as the case may be, under appropriate Town Ordinances or Regulations, to terminate at any time the Officer's employment." (Pl.'s Ex. C, ¶ 8).

Because paragraph 8 of the Employment Agreement specifically reserved for the employer the discretion to terminate the employment of a probationary officer, such as Carroll, the Court holds that the Employment Agreement cannot be the source of any property interest in continued employment.

#### d. *General Orders Manual*

■ The Town adopted a General Orders Manual outlining procedures applicable to the Town's Police Department, and it became effective February 20, 1994, a little over a month before Carroll was terminated. (Pl.'s Ex. G; Defs.' Ex. 36 (excerpts)).

Carroll emphasizes that the General Orders Manual requires all allegations of major disciplinary violations to be heard by an Administrative Hearing Board which makes a recommendation to the Chief of Police after notice of the charges has been given to the officer. (Pl.'s Ex. G, § 3/833 *et seq.*). Carroll argues that by enacting the General Orders Manual, the Town has created a protected interest for all officers. *See Hewitt v. Helms,* 459 U.S. 460, 472–73, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). Alternatively, Carroll argues that the General Orders Manual entitles her to an appeal procedure if she is not provided with a statement of charges, (Pl.'s Ex. G, § 3/817 *et seq.*), and she contends that she was never provided with a statement of charges and was denied a request for a hearing.

The Defendants argue that these procedures are inapplicable because no major disciplinary actions were taken against Carroll; instead, the action taken was an employment decision based on deficiencies in her performance during her probationary period. The Defendants also argue that the General Orders Manual provides no protections to probationary officers beyond LEOBR (Defs.' Ex. 36, § 3/803.15).

The Court holds that no constitutionally protected interest is created by the General Orders Manual. First, the sections of the General Orders Manual addressing major disciplinary violations are inapplicable because no major disciplinary action was taken against Carroll. Second, any procedural requirements contained in the General Orders Manual beyond those required by the Due Process Clause are not enforceable through a § 1983 action. *Riccio v. County of Fairfax, Va.,* 907 F.2d 1459, 1469 (4th Cir.1990) ("If state law grants more procedural rights than the Constitution would otherwise require, a

state's failure to abide by that law is not a federal due process issue.").

### e. *Town Charter § 2-203*

■ At the time Carroll signed her Employment Agreement, personnel decisions involving police officers were made by the Police Committee of the Town Council. (Pl.'s Ex. 4). Pursuant to Resolution 93-20, which became effective January 23, 1994, authority for making personnel decisions involving police officers was transferred from the Police Committee to the Chief of Police.

Carroll argues that in spite of the legislative change, she had a constitutionally protected interest which required the Town Council to review the decision to terminate her. She relies on the fact that her Employment Agreement incorporated the Town Charter in effect when the agreement was signed and argues that the Town was thereby prevented from amending its charter as it related to her employment with the Town.

The Defendants argue that "[t]here is no factual or legal authority ... for this novel proposition" that she was entitled to the procedure under the repealed ordinance rather than the ordinance in effect at the time of her termination.

The Court holds that incorporation of the Town Charter in the Employment Agreement does not prevent the Town from amending its laws and applying the amended laws to its employment relationship with Carroll. Accordingly, no property interest was created.

### f. *"Name-Clearing Hearing"*

Finally, Carroll argues that she has a generalized liberty interest that necessitates a procedural opportunity to clear her name because she was terminated from public employment under circumstances that put her "reputation, honor or integrity at stake." *See Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Rosenstein v. City of Dallas, Texas,* 876 F.2d 392, 395 (5th Cir.1989), *cert. denied,* 498 U.S. 855, 111 S.Ct. 153, 112 L.Ed.2d 119 (1990).

■ It is firmly established that discharge from public employment under circumstances that put an employee's reputation, honor, or integrity at stake gives rise to a liberty interest under the Fourteenth Amendment and requires a procedural opportunity to clear one's name. *See, e.g., Bishop v. Wood,* 426 U.S. 341, 348, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). To succeed in a § 1983 claim for denial of a name-clearing hearing, however, an employee must establish: (1) she was discharged, (2) charges were made against her in connection with the discharge that were so stigmatizing as to virtually foreclose her freedom to take advantage of other employment opportunities, (3) the charges were false, (4) no meaningful public hearing was conducted prior to her discharge, (5) the charges were made public, (6) she requested a hearing to clear her name, and (7) her request was denied. *Rosenstein,* 876 F.2d at 395-96; *Leese v. Baltimore County,* 64 Md.App. 442, 460-61, 497 A.2d 159 (1985), *cert. denied,* 305 Md. 106, 501 A.2d 845 (1985).

■ The Defendants argue that the comments made in her performance evaluation were not sufficiently stigmatizing to implicate a constitutionally protected liberty interest. *Robertson v. Rogers,* 679 F.2d 1090, 1092 (4th Cir.1982) (holding that statement that plaintiff had been fired for "incompetence in outside activities" did not impose sufficient stigma). In support thereof, the Defendants note that Carroll has been hired by two police departments since her termination by the Town. The Defendants also argue that the statements in Carroll's evaluation were not false. Finally, the Defendants highlight Carroll's admission that the Department "did not publicize [her] employment file," (Pl.'s Opp'n at 20), and argue that absent publication there can be no violation of any liberty interest.

The Court holds that no liberty interest was implicated, and Carroll was not entitled to a name clearing hearing. The comments in her file were neither false nor sufficiently stigmatizing to warrant a name clearing hearing. Moreover, the comments were only released in response to requests by Carroll as she sought new employment and, thus, were not publicized by the Town. *Campos v.*

*Guillot,* 743 F.2d 1123, 1126 (5th Cir.1984) (ruling that no liability exists if an agency has carefully kept its comments confidential and the plaintiff caused them to be made public).

### 2. *Plaintiff's First Amendment Rights*

■ Carroll argues that her First Amendment rights to speak on matters of public concern and to petition the government for redress of grievances were violated when she was terminated in retribution for exercising her rights. Specifically, Carroll refers to a January 31, 1994 letter from her attorney to the Town's attorney, a March 2, 1994 statement by the Town's attorney in a meeting, and a March 15, 1994 letter from her attorney to the Town's attorney.

The Defendants argue that Carroll's statements did not involve matters of public concern but rather involved matters of personal interest. *DiMeglio v. Haines,* 45 F.3d 790, 805 (4th Cir.1995) (holding that communications between employees speaking as employees are not of public concern).

The Court finds as a matter of law that Carroll's First Amendment rights are not implicated because she was not speaking on matters of public concern.

### 3. *Plaintiff's Right to Equal Protection*

■ Carroll asserts that she was denied equal protection of the laws when "[t]he Town ignored [her] complaint of unfair treatment, adopted a resolution in an effort to alter her rights, and assisted Defendant Bacon in carrying out his discriminatory actions." (Pl.'s Opp'n at 19). In essence, she argues that she was denied equal protection of the laws because she was discriminated against on the basis of her sex.

The Defendants argue that she can only succeed on this claim if she establishes her claim of sex discrimination, which the Defendants assert she cannot.

Based on the discussion of her sex discrimination claim below, the Court holds that Carroll's right to equal protection was not violated.

### 4. *Liability of Town*

Carroll contends that the Town should be liable for any violations of her rights because Werge and Bacon acted under color of law and pursuant to a policy, ordinance, regulation, or decision of the Town. *Monell v. Department of Social Serv.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In particular, Carroll points to the decision of the Town to enact Resolution 93–20, which transferred authority for making personal decisions regarding police officers from the Town Council to the Police Chief. Carroll argues that Mayor Werge informally established Town policy by encouraging Bacon to terminate Carroll. Carroll also asserts that the Town sanctioned her termination.

The Town argues there was no official policy or persistent widespread practice which would impose liability on the Town. The Town refutes Carroll's suggestion that Resolution 93–20 was designed to deprive Carroll of her due process rights by noting that it was introduced before Bacon performed Carroll's evaluation. Moreover, the Town contends that for Carroll to establish that a facially lawful municipal action, such as passage of Resolution 93–20, led Bacon to violate her rights she must demonstrate that the municipal action was taken with "deliberate indifference as to its known and obvious consequences." *Board of County Comm'rs of Bryan County, Oklahoma v. Brown,* 520 U.S. 397, 117 S.Ct. 1382, 1390, 137 L.Ed.2d 626 (1997).

The Town also suggests that Carroll's claims against Werge and Bacon in their official capacities must fail if her claim against the Town fails. *Reeves v. Thigpen,* 879 F.Supp. 1153, 1167 (M.D.Ala.1995) (indicating that an official capacity suit is, in all respects other than name, to be treated as a suit against the government entity) (quoting *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)), *aff'd without written opinion,* 103 F.3d 147 (11th Cir. 1996).

The Court need not address the potential liability of the Town under § 1983, because Carroll has not shown that she was deprived of any rights protected under § 1983.

### 5. *Individual Liability of Werge and Bacon*

Carroll suggests that even if the Town is not subject to municipal liability, her section 1983 claims may be maintained against Defendants Werge and Bacon in their individual capacities.

The Defendants argue that Werge and Bacon are both protected by qualified immunity. "It is undisputed that Werge acted within the scope of his authority when he signed the Resolution extending Carroll's probation to January 1994 and when he advised Bacon that he would support his recommendation to terminate her in March 1994." (Defs.' Reply at 20). "Similarly, it is undisputed that Bacon acted within the scope of his discretionary authority when he recommended Carroll be terminated in December 1993 and when he acted to terminate her employment in March 1994." (Defs.' Reply at 20).

The Court need not address the individual liability of Werge and Bacon, because Carroll has failed to show that she was deprived of any rights protected under § 1983.

### B. *Sex Discrimination (Counts II)*

■ To establish a *prima facie* case of sex discrimination, Carroll must prove that (1) she is a member of a protected class, (2) she was performing her job at a level that met her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) similarly situated employees received more favorable treatment. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Wileman v. Frank,* 979 F.2d 30, 33 n. 5 (4th Cir.1992); *Hudson v. Joseph B. Fay Co.,* 902 F.Supp. 85, 88 (D.Md.1995).

If Carroll makes out a *prima facie* case, the burden of production shifts to the Town to advance a legitimate nondiscriminatory reason for the treatment she suffered. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If the Town successfully advances a legitimate nondiscriminatory reason, then Carroll must demonstrate that the reason advanced by the Town was merely pretextual *and* that the real motive for her

treatment was her sex. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 507–08, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Theard v. Glaxo, Inc.,* 47 F.3d 676, 680 (4th Cir. 1995); *Hoeppner v. Crotched Mountain Rehabilitation Ctr.,* 31 F.3d 9, 17 (1st Cir.1994); *Nilson v. Historic Inns Group Ltd.,* 903 F.Supp. 905, 908 (D.Md.1995).

■ The Town argues that Carroll has failed to establish a *prima facie* case. It is undisputed that as a female Carroll is a member of a protected class and that her termination constituted adverse employment action. The Town, however, contends that she was not performing her duties satisfactorily. "In particular, Carroll was disciplined for her failure to safeguard Town property, to demonstrate proper judgment, to exhibit a temperament that was consistent with functioning as a police officer in the Town, to follow prescribed techniques in apprehending and arresting violators and to properly prepare and submit reports." (Defs.' Mem. at 27). The Town also asserts that Carroll has failed to show that similarly situated employees received more favorable treatment because after her termination the Town hired an African–American male, a white male, and a white female, who is still employed by the Town.

Alternatively, the Town argues that even if the Court finds that Carroll has established a *prima facie* case the Town has advanced a legitimate nondiscriminatory reason for terminating her.

Carroll contends that she has established a *prima facie* case. As to whether she was performing her duties in accordance with the Town's legitimate expectations, she contends that there is a material factual dispute. (Pl.'s Ex. L ¶ 15). As to whether similarly situated employees received more favorable treatment, Carroll contends that Officer John A. Gheen ("Gheen"), who was a male probationary officer, was treated more favorably. She notes that Gheen was never terminated despite having a "far worse" performance record, the terms of his extended probation were "far more generous," and he generally received more favorable treatment from Bacon. (Pl.'s Mem. at 28). Carroll argues that the fact that one of her replacements was a

female does not negate the possibility that her discharge was motivated by discriminatory animus.

Alternatively, Carroll asserts that "Defendants' reasons for terminating Officer Carroll were pretextual." (Pl.'s Mem. at 28). She points to the subjective factors used by Bacon in evaluating Carroll as evidence of his intent to discriminate.

The Court holds that Carroll has not established a *prima facie* case of sex discrimination. Although a material factual dispute appears to exist as to whether Carroll met her employers legitimate expectations, she has not shown that similarly situated employees were treated more favorably. Gheen was not terminated for his performance because he resigned, and otherwise they were treated similarly as both had their probationary status extended. Even assuming arguendo that Carroll could establish a *prima facie* case, the Town has come forward with a legitimate nondiscriminatory reason for terminating her, and she has not demonstrated that such reason was merely pretextual *and* that the real motive for her treatment was her sex. Accordingly, the Court will grant summary judgment as to the claim of sex discrimination in Count II.

## C. *Retaliatory Discharge (Count III)*

To make out a *prima facie* claim of retaliation, Carroll must show that (1) she engaged in protected activity, (2) her employer took adverse employment action against her, and (3) there was a sufficient causal connection between the protected activity and the adverse employment action. *McNairn v. Sullivan,* 929 F.2d 974, 980 (4th Cir.1991).

As with a sex discrimination case, if Carroll makes out a *prima facie* case, the burden of production shifts to the Town to advance a legitimate nondiscriminatory reason for her termination. *Burdine,* 450 U.S. at 254, 101 S.Ct. 1089. If the Town successfully advances a legitimate nondiscriminatory reason, then Carroll must demonstrate that the reason advanced by the Town was merely pretextual *and* that the real motive for her termination was her sex. *St. Mary's,* 509 U.S. at 507–08, 113 S.Ct. 2742; *Theard,* 47

F.3d at 680; *Hoeppner,* 31 F.3d at 17; *Nilson,* 903 F.Supp. at 908.

The Town notes that the role of the Court is not to assess the prudence of any particular job action. *Grier v. Casey,* 643 F.Supp. 298, 308 (W.D.N.C.1986) ("The law is clear that an employer's reason for its action may be a good reason, bad reason, a mistake of reason, or no reason at all as long as the decision was not based on race and/or sex or unlawful discriminatory criteria."). The Town contends that Carroll cannot make out a *prima facie* case of retaliatory discharge because the Town was not aware that she was pursuing discrimination charges. In particular, the Town alleges that it was not aware that Carroll planned to file discrimination charges until after her termination because her January 31, 1994 letter (Pl.'s Ex. X) was perceived as relating only to her status under LEOBR. The Town's attorney denies making any comments at a March 2, 1994 meeting with Carroll's attorney and denies receiving a March 15, 1994 letter (Pl.'s Ex. Z; Defs.' Ex. 39). The Town contends that any factual dispute regarding notice of the discrimination charges is not material because it does not show that Carroll's termination would have occurred "but for" the discrimination charges.

Alternatively, the Town contends that if the Court finds that Carroll has established a *prima facie* case of retaliatory discharge, then the Town has advanced a legitimate nondiscriminatory reason for her termination.

The Court concludes that Carroll has made a *prima facie* case of retaliatory discharge because (1) there is a material factual dispute as to whether the Town was aware of Carroll's intent to file a discrimination claim, (2) she was terminated, and (3) a causal link can be inferred from the fact that her protected activity was followed closely by her termination. The Town, nevertheless, advanced a legitimate nondiscriminatory reason for terminating Carroll, and she has not demonstrated that such reason was merely pretextual and that the real motive for her termination was retaliation for pursuing discrimination charges. Accordingly, the Court

will grant Defendants' Motion for Summary Judgment as to the retaliatory discharge claim in Count III.

### III. *Motions to Strike*

**A. *Defendants' Motion to Strike Affidavits***

Defendants filed a Motion to Strike four affidavits submitted by Carroll in support of her Opposition to Defendants' Motion for Summary Judgment.

#### 1. *Mary Ann Ryan Affidavit*

 Carroll's attorney, Mary Ann Ryan ("Ryan"), submitted her own affidavit alleging certain facts in support of Carroll's retaliatory discharge claim. (Pl.'s Ex. Y). Specifically, Ryan recounts a March 2, 1994 conversation she had with the Town's attorney and claims that she sent a March 15, 1994 letter to the Town's attorney. The Town's attorney disputes both of Ryan's contentions.

The Town moves to strike Ryan's affidavit because she was not identified as a fact witness in Carroll's answers to interrogatories and Rule 3.7 of the Rules of Professional Conduct prohibit a lawyer from "act[ing] as advocate at a trial in which the lawyer is likely to be a necessary witness...." Md. Prof. Cond. R. 3.7.

Ryan argues that her affidavit should not be stricken. She asserts that Defendants were in possession of her March 15, 1994 letter during discovery and, thus, had actual knowledge of her potential as a fact witness. Next, she contends that Rule 3.7 only applies to her role at trial and does not bar her testimony or participation in Carroll's representation until trial. She also indicates that arrangements have been made for another attorney to represent Carroll at trial.

The Court holds that Ryan's affidavit need not be stricken, but she would be disqualified from participating in Carroll's representation at trial.

#### 2. *Carroll Affidavit*

The Town argues that Carroll's affidavit (Pl.'s Ex. E) is "rife with conclusory statements and her own impressions or opinions concerning the thoughts and motivations of others." (Defs.' Mot. to Strike at 4). The Town seeks to strike certain portions of paragraphs 5, 7, 8, 13, 16, and 18. The Town is particularly concerned that Carroll's affidavit does not contain sufficient factual support to confirm that she possesses actual knowledge from which to draw her conclusions.

Carroll admits that her affidavit contains statements of opinion and impressions but contends that such opinions are appropriate, particularly when offered by the Plaintiff. She also asserts that her testimony is based on her first-hand experience.

After reviewing Carroll's Affidavit, the Court finds that the challenged paragraphs are admissible and should not be stricken.

#### 3. *David Kincaid Affidavit*

David Kincaid, who was a Police Officer with the Town of University Park during Carroll's employment, submitted an affidavit attesting to his view of Carroll and her treatment by Bacon and the Town. (Pl.'s Ex. L).

The Town moved to strike parts of paragraphs 8 and 9 because they allegedly contain impermissible opinion testimony and are not based on personal knowledge.

Carroll argues that David Kincaid's opinions are based on personal knowledge and, thus, admissible and should not be stricken.

The Court holds that the second sentence of paragraph 8—"He [Bacon] did not believe women should be in police work."—should be stricken because it is inadmissible speculation on Bacon's beliefs. The Court also holds that paragraph 9 should be stricken in its entirety. As to the first sentence, the Court is not provided with any basis for concluding that David Kincaid had personal knowledge of the incident or was even on duty at the time. As to the second sentence, the Court again has no basis for concluding that David Kincaid had personal knowledge of whether Bacon responded to the calls of other, male, officers.

#### 4. *Lorraine Kincaid Affidavit*

Lorraine Kincaid is the wife of Officer David Kincaid and a Police Officer for the

City of Hyattsville. She submitted an affidavit concerning complaints against Officer Gheen for responding to calls for police outside his jurisdiction and indicating her impression of Bacon. (Pl.'s Ex. 5).

The Town moved to strike the affidavit of Lorraine Kincaid in its entirety. The objection to paragraphs 4 and 5 is based on hearsay, and the objection to paragraph 6 is based on inadmissible opinion testimony and lack of adequate factual support.

Carroll argues that the affidavit is admissible because the opinions contained therein are derived from personal experience with Bacon.

After reviewing the affidavit of Lorraine Kincaid, the Court concludes that she has not provided adequate factual support for her statement in paragraph 6 that "it was my impression that he [Bacon] did not like to deal with women police officers." Accordingly, this portion of paragraph 6 should be stricken.

B. *Plaintiff's Motion to Strike Section of Defendants' Reply on Qualified Immunity*

Carroll filed a Motion to Strike a Section of Defendants' Reply Memorandum which addressed qualified immunity. Despite the caption, the practical effect of Plaintiff's Motion and the subsequent pleadings of both parties was to substantively address the issue of qualified immunity.

The Court cautions the parties that a Motion to Strike is not the proper procedural vehicle for addressing the issue of qualified immunity; rather, Carroll should have sought leave to file a surreply. Accordingly, the Court will deny Plaintiff's Motion to Strike and treat the Motion, Opposition, and Reply thereto as surreplies on the issue of qualified immunity.

IV. Conclusions

Based upon the foregoing analysis, Defendants' Motion for Summary Judgment will be granted. Defendants' Motion to Strike affidavits will be denied, except for part of paragraph 8 and all of paragraph 9 of David

Kincaid's affidavit and part of paragraph 6 of Lorraine Kincaid's affidavit. Plaintiff's Motion to Strike will be denied, and the pleadings will be treated as surreplies.

*ORDER*

In accordance with the attached Memorandum, it is this 11th day of August 1997, by the United States District Court for the District of Maryland, ORDERED:

1. That Defendants' Motion for Summary Judgment BE, and the same IS, hereby GRANTED; and

2. That Judgment BE, and the same IS, hereby ENTERED in favor of the Town of University Park, Maryland, Robert W. Werge, and Stephen S. Bacon; and

3. That Defendants' Motion to Strike Affidavits BE, and the same IS, hereby DENIED in part and GRANTED in part; and

4. That Plaintiffs' Motion to Strike the Section of Defendants' Reply on Qualified Immunity BE, and the same IS, hereby DENIED; and

5. That a copy of this Memorandum and Order be mailed to counsel for the parties.