**NORTHSHORE CYCLES, INC.,**
**Plaintiff–Appellant,**

v.

**YAMAHA MOTOR CORPORATION,**
**U.S.A., Defendant–Appellee.**

**No. 90–3402**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Dec. 26, 1990.

James A. Lightfoot, III, Lynn L. Lightfoot, Lightfoot & Lightfoot, New Orleans, La., for plaintiff-appellant.

Harry Joseph Philips, Jr., Taylor, Porter, Brooks & Phillips, Baton Rouge, La., for defendant-appellee.

Before GEE, SMITH and WIENER, Circuit Judges.

PER CURIAM:

In this Louisiana diversity lawsuit brought by Plaintiff–Appellant, Northshore Cycles, Inc., against Defendant–Appellee, Yamaha Motor Corporation, U.S.A. (Yamaha), to force Yamaha to repurchase the inventory of Northshore after it voluntarily terminated its Dealer Agreement with Yamaha, the district court dismissed Northshore's complaint for failure to state a claim upon which relief may be granted. The district court gave no written reason but apparently found that the 1988 statute relied on by Northshore could not be enforced without violating the "Law Impairing the Obligation of Contracts" provision of the United States Constitution. Although we find that the district court erred in dismissing this case without having reviewed the contract in question, we affirm the results in this instance after reviewing the contract filed at this court's request to supplement the record on appeal.

I.

On November 19, 1984, Yamaha and Northshore entered into a contract entitled Yamaha Sales and Service Agreement (Dealer Agreement). The Dealer Agreement contains no provision specifying its term or duration but, to the contrary, provides that it "shall continue until terminated as provided herein." The Dealer Agreement provides for "Termination for Cause (Immediate Effect)," on the basis of any one of several enumerated occurrences; for "Termination–General Non Performance" upon failure of either party to fulfill responsibilities and obligations of the Dealer Agreement and requiring at least sixty (60) days' prior written notice; and for "Termination–Death, Incapacity" by virtue of which Yamaha may terminate the agreement on at least fifteen (15) days' prior written notice in the event of the death, physical or mental incapacity or dissociation of certain individuals associated with Northshore. As a final method of termination, the Dealer Agreement permits Yamaha to do so by furnishing the dealer at least sixty (60) days' prior written notice if Yamaha should offer a new or modified form of agreement to all of its dealers. Notably, the Dealer Agreement does not provide for unilateral termination without cause. Because the agreement is "open ended," having no term specified, it contains no express provisions for extension or renewal, whether automatic or otherwise.

The Dealer Agreement contains a provision for repurchase of products by Yamaha upon termination of the arrangement with Northshore, but that provision clearly gives Yamaha the "option, but not the obligation, to repurchase" products from the dealer.

While the Dealer Agreement was in full force and effect, the Louisiana legislature adopted Act 327 of 1988 (the Statute) which became La.Rev.Stat.Ann. § 32:773.1 and :773.2 (West 1989), obligating manufacturers of motorcycles to repurchase inventories upon termination of dealership.[1] The Statute was approved by the Governor on July 7, 1988, and became effective on September 1, 1988.

On April 5, 1989, a letter to Yamaha from Northshore advised of its decision to terminate its operations as a new motorcycle dealer thirty days following the date of the letter. On May 30, 1989, a follow-up letter to Yamaha from Northshore purported to comply with the notification provision of the Statute, including mail delivery of Northshore's final parts inventory. Yamaha accepted Northshore's request to ter-

---

1. La.Rev.Stat.Ann. § 773.2 provides in part that:

    .      .      .      .      .

A(1) In the event the dealer ceases to engage in the business of being a motorcycle dealer or ceases to sell a particular make of motorcycle and after notice thereof to manufacturer by registered or certified mail, return receipt requested within thirty days thereafter, the manufacturer shall repurchase all new and used motorcycles of the current or immediate prior model year and parts on hand that have not been damaged or substantially altered to the prejudice of the manufacturer while in the possession of the dealer. All required demonstrators shall be repurchased by the manufacturer.

minate the Dealer Agreement but declined to repurchase Northshore's inventory.

## II.

In November, 1989, Northshore filed suit against Yamaha in state district court seeking to compel Yamaha to "repurchase those parts listed on the final inventory submitted by Northshore" and, in addition, to pay certain penalties prescribed in the statute plus additional damages. The case was timely removed to the United States District Court for the Eastern District of Louisiana with jurisdiction based on both diversity of citizenship and the federal constitutional question. In January, 1990, Yamaha moved to dismiss for Northshore's failure to state a claim upon which relief could be granted and a hearing was set for February 21, 1990. Yamaha's motion to dismiss was granted because Northshore failed to file an opposition. In March, 1990, Northshore filed a motion to reconsider and a memorandum in opposition to Yamaha's motion to dismiss. In May of 1990, a hearing was held following which the district court granted Yamaha's motion and dismissed Northshore's suit, without expressing reasons.

## III.

■ Article I, § 10, Clause 1, of the Constitution of the United States prohibits the several states from passing any "Law Impairing the Obligation of Contracts." Facially, the substantive provision of the Statute, requiring the manufacturer to repurchase inventory from the dealer, would appear to violate the constitutional prohibition if such repurchase obligation were enforced against a manufacturer whose contract with the dealer predated the effective date of the Statute. It is overly broad, however, to generalize (as did the district court inferentially) that every contract entered into prior to the effective date of the Statute is automatically immune from its inventory repurchase provisions. For example, a contract for a specified term such as one year or three years, which provides for automatic renewal from year to year or month to month unless one party notifies the other declining renewal, would likely not be constitutionally exempt from the Statute's inventory repurchase provisions if following the effective date of the Statute the then current term of the contract had expired and been automatically renewed. Similarly, an open ended dealer agreement which empowers either party to terminate without cause merely by furnishing, say, thirty (30) days' notice to the other party, might be construed as a month-to-month agreement which automatically reconducts itself each month until such notice is furnished by one of the parties. Such an arrangement, too, might be held ineligible for the constitutional shield against the inventory repurchase obligation of the statute because, conceptually, the agreement could be deemed to confect a new contract each month.

The district court, however, did not have the Dealer Agreement between Northshore and Yamaha before it. Without the ability to examine that agreement, the district court could not know whether the Dealer Agreement that was terminated in April of 1989, was, in fact or in law, the original 1984 agreement or merely a renewal or reconduction of that agreement, post-dating the effective date of the Statute. Consequently, it was error for the district court to grant Yamaha's motion to dismiss pursuant to Fed.R.Civ.P. Rule 12(b)(6) as though each and every motorcycle dealer contract entered into before September 1, 1988, is, ipso facto, exempt from the Statute's repurchase provision. Granted, the Dealer Agreement was not attached to or incorporated by reference in Northshore's pleadings, and Northshore failed to amend its pleadings to do so when given a second chance by the district court. That court might have, for example, treated Yamaha's motion to dismiss as a motion for summary judgment and required the parties or either of them to submit the Dealer Agreement as summary judgment evidence.

■ Because the record on appeal has been supplemented by submission of a copy of the Dealer Agreement, it is obvious to this court, as it presumably would have been to the district court had it viewed that

1044

agreement, that nothing contained therein would negate Yamaha's right to assert the constitutional protection against laws that impair the obligations of pre-existing contracts. Consequently, it would not further the ends of justice to remand this case to the district court when, as now, we review de novo the grant of a motion to dismiss under Rule 12(b)(6).

Having thus had the opportunity to review the Dealer Agreement, we concur in the district court's dismissal of Northshore's lawsuit for failure to state the claim upon which relief may be granted. Our concurrence, however, is based on a review of the Dealer Agreement and a determination that nothing contained therein negates Yamaha's constitutional protection. We disagree with the district court's dismissal without having viewed the Dealer Agreement because, at least by implication, such a dismissal implies an absolute *impairment of obligations* defense for any motorcycle manufacturer whose dealer contract predates the effective date of the Statute. For the foregoing reasons the district court's holding is, as to the results,

AFFIRMED.