McKAY NISSAN, LTD., an Illinois Corporation, Plaintiff,

v.

NISSAN MOTOR CORPORATION IN U.S.A., a California Corporation, Defendant.

No. 91 C 1429.

United States District Court, N.D. Illinois, E.D.

June 3, 1991.

David J. Griffin, Susan A. Americus, Griffin and Griffin, Chicago, Ill., for plaintiff.

Kenneth S. Goodsmith, Latham & Watkins, Chicago, Ill., for defendant.

## ORDER

BUA, District Judge.

This case involves a dispute between a dealer of Nissan motor vehicles, McKay Nissan, Ltd. ("McKay"), and its distributor, Nissan Motor Corporation in U.S.A. ("Nissan"). McKay alleges that Nissan has violated § 6 of the Illinois Motor Vehicle Franchise Act, Ill.Rev.Stat. ch. 121½, para. 756, by failing to provide full compensation for certain warranty services provided by McKay.[1] Specifically, McKay seeks an ac-

---

1. Section 6 provides in relevant part:
(a) Every manufacturer, distributor, wholesaler, distributor branch or division, factory branch or division, or wholesale branch or division shall properly fulfill any warranty agreement and adequately and fairly compensate each of its motor vehicle dealers for labor and parts.
(b) In no event shall such compensation fail to include reasonable compensation for diag-

counting for warranty claims it submitted to Nissan between January 30, 1987 and December 7, 1989.

Nissan now moves to dismiss McKay's complaint. In support of its motion to dismiss, Nissan contends that McKay does not have a remedy under the Act because the Act was not in effect at the time the parties entered into their franchise agreement.[2] A retroactive application of the Act, Nissan alleges, would impair pre-existing contractual rights. Nissan asserts that its obligations to McKay are governed exclusively by the franchise agreement and that additional obligations may not be engrafted onto the agreement by the Act.

■ Illinois courts have recognized that the Act may not be applied retroactively to pre-existing franchise agreements. *See Northwest Lincoln–Mercury v. Lincoln–Mercury Div. Ford Motor Co.*, 158 Ill. App.3d 609, 612, 110 Ill.Dec. 633, 635, 511 N.E.2d 810, 812 (1987). And McKay does not suggest otherwise. Instead, McKay argues that the agreement was amended several times after the effective date of the Act, and that these amendments essentially created a new agreement governed by the Act's provisions.

McKay points to four modifications to show that a new agreement was created after the Act's effective date. The first two modifications pertain to the relocation of McKay's franchise. On January 29, 1981, the parties executed an addendum to

the agreement when McKay moved its franchise from 733 N. Chicago Avenue, Evanston, Illinois, to 717 N. Chicago Avenue, Evanston, Illinois. A second addendum was executed on June 14, 1984 to allow McKay to move back to the location at 733 N. Chicago Avenue. In addition to these addenda, McKay directs the court's attention to two formal amendments to the franchise agreement. On September 12, 1985, the parties amended the agreement to change McKay's corporate name from "McKay Datsun, Inc." to "McKay Nissan, Ltd." The agreement was further amended on May 25, 1988 to reflect a change in the residential address of McKay's executive manager. Considering these apparently routine contract modifications, the court is not persuaded that the parties created a new contractual relationship.

■ McKay seems to believe that any amendment, no matter how insignificant, creates a new agreement merely because the initial agreement has been changed to some extent. But the question is not whether any changes were made to the contract; it is whether existing rights were significantly altered. In other words, the modifications must effect a material alteration of the parties' rights and obligations before it can be said that the parties intended a new contract or agreement. *See Bitronics Sales Co. v. Microsemiconductor Corp.*, 610 F.Supp. 550, 557 (D.Minn.1985); *Easterby–Thackston, Inc. v. Chrysler Corp.*, 477 F.Supp. 954, 956 (D.S.C.1979).[3]

nostic work, as well as repair service and labor. Time allowances for the diagnosis and performance of warranty work and service shall be reasonable and adequate for the work to be performed. In the determination of what constitutes reasonable compensation under this Section, the principal factor to be given consideration shall be the prevailing wage rates being paid by the dealer in the relevant market area in which the motor vehicle dealer is doing business, and in no event shall such compensation of a motor vehicle dealer for warranty service be less than the rates charged by such dealer for like service to retail customers for nonwarranty service and repairs....
Ill.Rev.Stat. ch. 121½, para. 756 (1989).

2. The parties entered into the agreement on May 11, 1979, and the Act did not take effect until June 29, 1979.

3. The cases relied upon by McKay, see *Barrett v. Lawrence,* 110 Ill.App.3d 587, 66 Ill.Dec. 173, 442 N.E.2d 599 (1982) (and the cases cited therein); *Northwest Lincoln–Mercury v. Lincoln–Mercury Div. Ford Motor Co.,* 158 Ill.App.3d 609, 110 Ill.Dec. 633, 511 N.E.2d 810 (1987), do not hold that every time a contract is somehow altered or amended, a new contractual agreement is formed, extinguishing the old contract. Those decisions involved contractual modifications that were significant enough to change the parties' obligations under the particular contracts. In *Barrett,* a contract to purchase a condominium was amended to change the date for final payment and transfer of title. In *Northwest Lincoln–Mercury,* a franchise agreement was amended to effectuate a change in the ownership of the dealer. The amendments involved in those cases went to the very heart of the parties' contractual rights.

**1320**

None of the amendments identified by McKay demonstrate that the parties entered into a new agreement. The parties certainly did not renegotiate the terms of the franchise agreement. The amendments, which were administrative in nature, did not change the parties' contractual rights. Nor did the amendments vary the responsibilities and duties of either party. In short, the contractual modifications at issue were too insubstantial to have established a new contract which replaced the original franchise agreement. Even McKay admits that the amendments did not terminate the 1979 agreement. *Response Memorandum,* at 7, 9.

As Nissan argues in its motion to dismiss, McKay's right to reimbursement is defined solely by the franchise agreement. The Act may not be imposed to interfere with this previously existing contractual relationship. The parties' rights vested prior to the Act's effective date and, therefore, McKay cannot resort to the Act's provisions for a remedy.

A determination that the Act does not apply to the 1979 agreement and amendments does not fully dispose of McKay's complaint, however. The parties entered into a renewal agreement on April 3, 1989, long after the Act (and any relevant amendments) came into effect. Thus, if any of the alleged violations occurred after April 3, 1989, McKay may pursue a claim under the Act because there is no retroactivity problem. Since it is not clear from the complaint whether any violations took place after that date, McKay's complaint cannot be dismissed in its entirety.

*Accordingly, Nissan's motion to dismiss is granted in part and denied in part.* To the extent the alleged violations occurred prior to April 3, 1989, the motion to dismiss is granted. Insofar as McKay's claim rests on conduct occurring after April 3, 1989, the motion is denied.

IT IS SO ORDERED.