957 A.2d 595

## JOHN DEERE CONSTRUCTION AND FORESTRY CO.

v.

## RELIABLE TRACTOR, INC.

Misc. No. 12 Sept. Term, 2007.

Court of Appeals of Maryland.

Sept. 15, 2008.

Reconsideration Denied Oct. 31, 2008.

140

Randall L. Allen (Mike H. Shanlever of Alston & Bird LLP of Atlanta, Georgia; Kevin F. Arthur and Catherine M. Manofsky of Kramon & Graham, P.A. of Baltimore), on brief for appellant.

Kevin B. Getzendanner (Debra G. Buster and Roger A. Chalmers of Arnall Golden Gregory LLP of Atlanta, Georgia; Paul Mark Sandler of Shapiro Sher Guinot & Sandler of Baltimore), on brief, for appellee.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, IRMA S. RAKER (Retired, Specially Assigned), DALE R. CATHELL (Retired, Specially Assigned), JJ.

GREENE, J.

This case comes to this Court as a certified question from the United States District Court for the Middle District of Georgia. We are asked to decide whether the good cause

provision of the Maryland Equipment Dealer Act ("the Act"), Md.Code (1975, 2005 Repl.Vol.), § 19–103 of the Commercial Law Article, applies to two dealer agreements, where the good cause provision of the Act was enacted after the contracts were executed but before the attempted termination of the contracts that gave rise to the cause of action in this case.

We shall hold that the good cause provision applies to the dealer agreements at issue in this case, and that the attempted termination, without cause, of the agreements at issue in this case, is prohibited by Maryland law. Further, we shall hold that the two open-ended agreements,[1] which were subject to termination by either party with 120 days notice, were renewed following the enactment of § 19–103. Accordingly, the law, which was in effect at the time of the renewal, was incorporated into the agreements in accordance with Maryland law.

## FACTUAL AND PROCEDURAL BACKGROUND

We adopt the underlying facts as set forth by the United States District Court for the Middle District of Georgia in its certification order. The court stated:

> Plaintiff Reliable Tractor, Inc. is an authorized dealer of [appellant[2]] John Deere Construction & Forestry Company's ("John Deere") Forestry Equipment and Utility Equipment lines. The dealer agreements under which [Reliable] operates as an authorized John Deere dealer were entered into by [Reliable] and [John Deere] in 1984. On March 27, 2007, [appellant] John Deere issued a notice of termination to [appellee], stating that [appellant] was going to terminate

---

1. An open-ended agreement is an agreement that does not provide a specific expiration date by its own terms, but rather will continue indefinitely until either or both parties terminate the contract, in this case, after 120 days notice.

2. Pursuant to Md. Rule 8–305(b), the certifying court identified the Defendant John Deere Construction & Forestry Company ("John Deere") to be treated as appellant in this matter, and we therefore refer to John Deere as appellant, and Reliable Tractor, Inc. as appellee.

the dealer agreements in 120 days. *The dealer agreements specifically state that John Deere may terminate the agreements without cause if John Deere gives 120 days notice prior to termination.* At the time [Reliable] and [John Deere] entered into the dealer agreements, Maryland did not have any law that prohibited the termination of a dealer agreement without cause.

In 1987 Maryland enacted the Equipment Dealer Contract Act ("the Equipment Dealer Act"). *See* MD.CODE ANN., COM. LAW §§ 19–101 to 19–305 (West 2007). In 1998 the Maryland Legislature amended the Equipment Dealer Act to provide that equipment suppliers, such as John Deere, cannot terminate a dealer agreement "without good cause" ("the good cause provision"). *See* MD.CODE ANN., COM. LAW § 19–103.

In this case, [Reliable] has moved for summary judgment on Count II of its complaint, which seeks a declaratory judgment that [John Deere's] attempted without cause termination is prohibited by the Equipment Dealer Act. [John Deere], on the other hand, contends that the Equipment Dealer Act's good cause provision does not apply to this case because the good cause provision was enacted after the dealer agreements at issue were executed, and Maryland law does not permit the retroactive application of a law in the absence of clear legislative intent.

(Footnote omitted.)

The U.S. District Court then certified the following question of law to this Court, pursuant to Md.Code (1973, 2006 Repl. Vol.), § 12–603 of the Courts and Judicial Proceedings Article,[3] and Md. Rule 8–305 [4]:

---

**3.** Md.Code (1973, 2006 Repl.Vol.), § 12–603 provides:

**§ 12–603. Power to answer.**

The Court of Appeals of this State may answer a question of law certified to it by a court of the United States or by an appellate court of another state or of a tribe, if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling appellate decision, constitutional provision, or statute of this State.

Whether the Maryland Equipment Dealer Act's good cause provision applies to the termination of a dealer agreement where the dealer agreement was entered into before the good cause provision was enacted but the alleged without cause termination occurred after the good cause provision was enacted?

## DISCUSSION

Maryland law currently prohibits suppliers[5] from terminat-

---

4. Md. Rule 8–305 provides:

**Rule 8–305. Certification of questions of law to the court of appeals.**
 (a) **Certifying court.** "Certifying court" as used in this Rule means a court authorized by Code, Courts Article, § 12–603 to certify a question of law to the Court of Appeals of Maryland.
 (b) **Certification order..** In disposing of an action pending before it, a certifying court, on motion of any party or on its own initiative, may submit to the Court of Appeals a question of law of this State, in accordance with the Maryland Uniform Certification of Questions of Law Act, by filing a certification order. The certification order shall be signed by a judge of the certifying court and state the question of law submitted, the relevant facts from which the question arises, and the party who shall be treated as the appellant in the certification procedure. The original order and seven copies shall be forwarded to the Court of Appeals by the clerk of the certifying court under its official seal, together with the filing fee for docketing regular appeals, payable to the Clerk of the Court of Appeals.
 (c) **Proceeding in the Court of Appeals.** The filing of the certification order in the Court of Appeals shall be the equivalent of the transmission of a record on appeal. The Court of Appeals may request, in addition, all or any part of the record before the certifying court. Upon request, the certifying court shall file the original or a copy of the parts of the record requested together with a certificate, under the official seal of the certifying court and signed by a judge or clerk of that court, stating that the materials submitted are all the parts of the record requested by the Court of Appeals.
 (d) **Decision by the Court of Appeals.** The written opinion of the Court of Appeals stating the law governing the question certified shall be sent by the Clerk of the Court of Appeals to the certifying court. The Clerk of the Court of Appeals shall certify, under seal of the Court, that the opinion is in response to the question of law of this State submitted by the certifying court.

5. A "supplier" is defined in relevant part as a "wholesaler, manufacturer, or distributor who enters into a contract with a dealer." Md.Code (1975, 2005 Repl.Vol.), § 19–101(k)(1) of the Commercial Law Article.

ing a dealer [6] contract "without good cause" ("the good cause provision"). Md.Code (1975, 2005 Repl.Vol.), § 19–103 of the Commercial Law Article (hereinafter " § 19–103"). This requirement that suppliers have "good cause" to terminate a dealer contract was first enacted in 1998. 1998 Md. Laws, ch. 333.[7] John Deere argues that, because the good cause provision was not enacted until 1998, application of the statute to the contracts executed in 1984 would constitute a retroactive application of the statute. Applying a retroactive analysis, John Deere argues that the statute cannot apply to the contracts in this case, because it fails both requirements for a proper retroactive application of a statute: there must be clear legislative intent for the statute to apply retroactively, and the application of the statute must not interfere with vested rights, or deny due process.

Reliable Tractor argues, by contrast, that application of the good cause provision would not constitute a retroactive application of the statute. Reliable Tractor's argument is based on its assertion that these were open-ended agreements that, because they required 120 days notice for termination, effectively became a series of 120 day contracts. As such, Reliable Tractor asserts that application of the good cause provision in this case is, in effect, prospective, as neither party had a vested right in the contracts beyond that 120 day notice period.

■ John Deere is correct in its assertion that, pursuant to Maryland law, a proper retroactive application of a statute requires a two part analysis: first, a determination that the legislature clearly intended the statute to apply retroactively,

---

6. A "dealer" is defined as "a person engaged in the business of selling at retail construction, farm, utility, or industrial equipment, implements, machinery, attachments, outdoor power equipment, or repair parts." Md.Code (1975, 2005 Repl.Vol.), § 19–101(e) of the Commercial Law Article.

7. Although it was amended in 2005, 2005 Md. Laws, ch. 433, the statute continues to require that suppliers have "good cause" before terminating a dealer contract.

and second, a determination that retroactive application does not "impair vested rights, deny due process, or violate the prohibition against *ex post facto* laws." *Allstate Ins. Co. v. Kim*, 376 Md. 276, 289, 829 A.2d 611, 618 (2003). We do not, however, reach the retrospective application analysis because we conclude that applying the good cause provision to these contracts is not a retroactive application, but rather a prospective one.

 It is well-established in Maryland that "laws subsisting at the time of the making of a contract enter into and form a part thereof as if expressly referred to or incorporated in its terms, and the principle embraces alike those provisions which affect the validity, construction, discharge and enforcement of the contract." *Dennis v. Mayor and City Council of Rockville*, 286 Md. 184, 189, 406 A.2d 284, 287 (1979); *see also Lema v. Bank of America*, 375 Md. 625, 645, 826 A.2d 504, 516 (2003) (noting that "parties are presumed to know the law when entering into contracts, and thus, 'all applicable or relevant laws must be read into the agreement of the parties just as if expressly provided by them, except where a contrary intention is evident'" (quoting *Wright v. Commercial & Sav. Bank*, 297 Md. 148, 153, 464 A.2d 1080, 1083 (1983))). In order to determine whether the good cause provision existed at the time of the "making" of the contract, such that the provision was incorporated in its terms, we must first decide whether the good cause provision of § 19–103 is being applied retroactively or prospectively.

 Generally, the presumption is that statutes operate prospectively unless there is evidence of a contrary intent. *Kim*, 376 Md. at 289, 829 A.2d at 618. We have said that "'[r]etroactivity, even where permissible, is not favored and is not found, except upon the plainest mandate in the act.'" *State Farm Mut. Auto. Ins. Co. v. Hearn*, 242 Md. 575, 582, 219 A.2d 820, 824 (1966) (quoting *Bell v. State*, 236 Md. 356, 369, 204 A.2d 54, 61 (1964)). "This rule of construction is particularly applicable where the statute adversely affects

substantive rights, rather than only altering procedural machinery." *Id.*

To date, although we have clearly established the analysis to be used when applying a statute retroactively, this Court has only provided limited analysis of what constitutes a retrospective application of a statute. *See Kim*, 376 Md. at 289–90, 829 A.2d at 618–19 (noting only that retroactive application of a statute is one that " 'determine[s] the legal significance of acts or events that occurred prior to its effective date' " (quoting *State Comm'n on Human Rel. v. Amecom Div.*, 278 Md. 120, 123, 360 A.2d 1, 3–4 (1976))); *Langston v. Riffe*, 359 Md. 396, 406, 754 A.2d 389, 394 (2000) (defining the terms "retroactive" and "retrospective" as "acts which operate on transactions which have occurred or rights and obligations which existed before passage of the act"); *see also State Ethics Comm'n v. Evans*, 382 Md. 370, 389, 855 A.2d 364, 375 (2004) (Harrell, J., dissenting) ("Our cases, for the most part, however, have not considered in any depth the definition of, or developed an analytical paradigm for determining in the first instance, what constitutes retroactive application of a statute.").

■ Notably, the Supreme Court of the United States has provided some guidance on how to define retroactive application of a statute. In *Landgraf v. USI Film Products*, 511 U.S. 244, 280, 114 S.Ct. 1483, 1505, 128 L.Ed.2d 229, 262 (1994), the Supreme Court defined retroactive application of a statute as one that "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." The Court rejected a bright line rule, noting that "a statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment. . . ." *Landgraf*, 511 U.S. at 269, 114 S.Ct. at 1499, 128 L.Ed.2d at 254–55. Instead, the Court required a "process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event." *Landgraf*, 511 U.S. at 270, 114 S.Ct. at 1499, 128 L.Ed.2d at 255. In the process,

the factors to be considered are "fair notice, reasonable reliance, and settled expectations." *Id.* We adopt that analysis.

■ Considering these factors, and the facts of this case, we hold that the application of the good cause provision of § 19-103 to these contracts is prospective, and therefore we do not apply a retrospective analysis. In this case, the contracts, by their terms, could be terminated by either party at any time without good cause, merely by providing 120 days notice. It is logical, then, that neither party could reasonably expect the contracts to continue for more than 120 days from any given date. Once the statute was enacted, the parties were on constructive notice of its existence. *See Lema,* 375 Md. at 645, 826 A.2d at 516 (noting that "parties are presumed to know the law when entering into contracts"). By continuing to perform their obligations under the contracts without providing notice of termination, the parties effectively renewed their contracts consistent with the applicable law in effect at the time. *See id.* (noting that " 'all applicable or relevant laws must be read into the agreement of the parties just as if expressly provided by them, except where a contrary intention is evident' " (quoting *Wright,* 297 Md. at 153, 464 A.2d at 1083)). Balancing principles of fair notice, reasonable reliance, and settled expectations, we conclude that the correct analysis in light of these facts is a prospective, rather than a retrospective, application of the statute.

Furthermore, case law supports our determination that a retroactive analysis does not apply to open-ended agreements when they are allowed to continue for longer than the duration of the notice period, after the enactment of an applicable statute. In a case strikingly similar to the case at hand, the United States Court of Appeals for the Fifth Circuit noted that "an open ended dealer agreement which empowers either party to terminate without cause merely by furnishing, say, thirty (30) days' notice to the other party, might be construed as a month-to-month agreement which automatically reconducts itself each month until such notice is furnished by one of the parties." *Northshore Cycles, Inc. v. Yamaha Motor Corp.,*

919 F.2d 1041, 1043 (5th Cir.1990). In that case, Northshore Cycles, a dealer of Yamaha products, brought suit against Yamaha to force Yamaha to repurchase its inventory. *Northshore,* 919 F.2d at 1043. The dealer agreement between the two parties gave Yamaha the option to repurchase inventory upon termination, but did not obligate it to do so. *Northshore,* 919 F.2d at 1042. In the time between the contract's execution and its termination, Louisiana enacted a statute requiring manufacturers to repurchase inventory upon terminating a dealer contract. *Id.* The Fifth Circuit reasoned that open-ended dealer agreements without a fixed termination date, that instead renew automatically until either party provides notice, are akin to individual contracts lasting the duration of the notice period. *Northshore,* 919 F.2d at 1043.

In *Cloverdale Equipment Co. v. Manitowoc Engineering Co.,* 964 F.Supp. 1152 (E.D.Mich.1997), the United States District Court for the Eastern District of Michigan discussed the *Northshore* opinion. *Cloverdale* involved a dealer contract, subject to termination by either party with 90 days notice, that was only to last one year. 964 F.Supp. at 1154. After the contract's expiration, the parties continued their business relationship. *Id.* Eight days after the expiration of the one-year contract, Michigan adopted a law requiring "good cause" in order for a supplier to terminate such a contract, and four months later, the manufacturer notified the dealer of its intent to terminate the contract after 90 days. *Cloverdale,* 964 F.Supp. at 1154–55. In its discussion of whether the Michigan law applied retroactively, the *Cloverdale* court noted the *Northshore* court's discussion of open-ended contracts with notice provisions, but determined that *Northshore* provided no guidance where there was no express automatic renewal provision, nor was there an open-ended contract. 964 F.Supp. at 1160–61. Unlike *Cloverdale,* but similar to *Northshore,* the present case involves an open-ended agreement.

The agreement in the present case requires the parties to provide 120 days notice before termination. Applying the *Northshore* rationale, the agreement in this case is a succession of renewable contracts lasting 120 days. Therefore, if

Deere had provided notice of termination within 120 days of the enactment of § 19–103, to apply that enactment to the contracts at issue would then constitute a retroactive application of the law. Deere, however, did not attempt to terminate the contracts, without cause, until more than 120 days after § 19–103 became law. Thus, by that time, the contracts had already renewed. Accordingly, any application of § 19–103 to the contracts as renewed constituted a prospective application of the law.

John Deere relies on *Rigger v. Baltimore County,* 269 Md. 306, 305 A.2d 128 (1973), for the proposition that the application of the statute in this case would be retroactive. In *Rigger,* the relevant statute declared that lease provisions holding landlords' harmless from liability for injuries arising from their own negligence were against public policy. 269 Md. at 308, 305 A.2d at 130. We held that the statute could not be retroactively applied to a lease which was executed prior to the enactment of the statute, but where the injury in question occurred after the enactment of the statute. *Rigger,* 269 Md. at 312, 305 A.2d at 132.

*Rigger* involved a ten-year lease executed in 1960 that included an indemnification clause whereby the tenant was required to indemnify the landlord for injuries sustained by third parties on the premises. 269 Md. at 307, 305 A.2d at 129. In 1964, the General Assembly deemed such exculpatory clauses void, as they were contrary to public policy. *Rigger,* 269 Md. at 308, 305 A.2d at 130. In 1965, a third party who was injured on the premises sued, and a dispute arose as to the liability of the lessor and the lessee. *Rigger,* 269 Md. at 308–09, 305 A.2d at 130. In *Rigger,* we said that "[t]he determinative event in this context is the execution of the lease, and not the happening of the accident." 269 Md. at 311, 305 A.2d at 132.

Our decision in *Rigger* is not incompatible with the rationale in *Northshore.* Under the *Northshore* rationale, where there is a contract with a fixed term, executed prior to the effective date of a statute and set to expire after the

effective date of the statute, application of the statute is retroactive unless the contract was allowed to renew after the statute became effective. *See* 919 F.2d at 1043. In *Rigger,* the contract was for a set term, executed prior to the effective date of the statute and set to expire thereafter. 269 Md. at 307–08, 305 A.2d at 129–30. The present case, however, is distinguishable from *Rigger.* Like the situation in *North-shore,* this case involves open-ended contracts that were effectively renewed after the good cause provision was enacted. Given the periodic nature of the contracts, the date of execution is, therefore, not the original date of execution, but rather the date of the most recent 120 day renewal. Because the contracts were allowed to renew following the enactment of the good cause provision, that provision applies prospectively.

Reliable Tractor argues that Maryland cases suggest that the relevant date, for purposes of determining whether a statute is being applied retroactively, is the date of the event giving rise to the cause of action, and not the date of the execution of the contract. It maintains that the fact that the parties entered into their contract before the good cause provision came into being is completely irrelevant. In *Hearn,* although both the execution of the insurance contract and the date of the accident preceded the enactment of the statute, this Court noted that "the accident occurred on March 3, 1964, suit was filed against Robert on April 10 and the statute did not become effective until June 1. The substantive right of State Farm to notice in accordance with the policy had accrued before the statute came into effect." 242 Md. at 583, 219 A.2d at 824. The date noted by this Court was not the date that the contract was executed, but instead the date of the accident. *Id.*

This Court has subsequently discussed *Hearn,* noting that "the statute ... did not apply to a[n insurance] policy in effect *when an accident occurred* on March 3, 1964." *Washington Suburban Sanitary Comm'n v. Riverdale Heights Volunteer Fire Co., Inc.,* 308 Md. 556, 561, 520 A.2d 1319, 1322 (1987) (emphasis added). Accordingly, in *Hearn,* the relevant acts or events pertaining to our construction of the insurance policies,

in that case, occurred prior to the statute's effective date. In the present case, however, the relevant acts or events occurred after the statute's effective date. Therefore, our analysis in *Hearn* does not control the outcome in this case.

Furthermore, even if we assume, *arguendo*, that our case law is inconsistent on the point of whether the relevant date for determining that the application of a statute is, or is not, retrospective is the date of the execution of the contract or the occurrence of the event that gave rise to the cause of action, we need not resolve that assumed discrepancy in this case. In this case, both the date of the execution of the contracts, and the date of the attempted termination that gave rise to the claim, took place after the enactment of the statute, and therefore the application of the statute is prospective. The ongoing nature of the contracts, together with the 120 day notice provision, effectively created a series of 120 day contracts. *See Northshore*, 919 F.2d at 1043. Because the contracts were allowed to renew after the enactment of the statute, the contracts were executed subsequent to the enactment of the statute. Likewise, the event that gave rise to the cause of action in this case is Deere's attempted termination of the contracts without good cause, which occurred on March 27, 2007, long after the enactment of the good cause provision. Because both the execution of the contracts and the event giving rise to the cause of action took place subsequent to the enactment of the statute, the statute applies prospectively.

■ Finally, the contractual provision which allows for termination without cause is clearly in conflict with the statutory provision of § 19–103, which requires termination for good cause. We have said that a contract provision that violates public policy set forth in a statute is invalid to the extent of the conflict between the contract and that policy. *Mayor & City Council of Baltimore v. Clark*, 404 Md. 13, 33, 944 A.2d 1122, 1133–34 (2008) (reiterating that " 'a contract conflicting with public policy set forth in a statute is invalid to the extent of the conflict between the contract and that policy' " (quoting *Medex v. McCabe*, 372 Md. 28, 39, 811 A.2d 297, 304 (2002))).

Thus, the provisions of the contracts at issue in this case that allow termination without good cause are invalid to the extent that they conflict with the good cause provision set forth in § 19–103.

**CERTIFIED QUESTION OF LAW ANSWERED AS SET FORTH ABOVE. COSTS TO BE EQUALLY DIVIDED BETWEEN THE PARTIES.**

HARRELL, MURPHY, and CATHELL, JJ., Dissent.

Dissenting Opinion by HARRELL, J., which MURPHY and CATHELL, JJ., join.

I dissent. Other than mischief, the only thing the Court's opinion in this matter may inspire is Quentin Tarantino to produce a sequel to "Pulp Fiction," to be called "Legal Fiction." In order to avoid confronting the constitutional implications of retrospective application of the good cause provision in the statute in question, the Majority opinion improperly conflates the separate and distinct contractual notions of renewal versus mere continuation. In this regard, it threatens significant damage to the vested rights of contracting parties.

The Majority opinion strains to "conclude that applying the good cause provision to these contracts is not a retrospective application, but rather a prospective one." Majority op. at 146, 957 A.2d at 599. In reaching this conclusion, the opinion errs in two significant respects, in my view. First, it extends well beyond any Maryland precedent the principle that generally laws existing at the time of entering into a contract become part of that contract. Second, the Majority opinion improperly equates the making of a contract with the mere continuance of performance under an already existing open-ended contract, in direct contradiction to settled authority drawing a clear distinction between the two.

I.

The Majority opinion is correct that it is well-settled under Maryland law that " 'laws subsisting at the time of the making

of a contract enter into and form a part thereof as if expressly referred to or incorporated in its terms, and the principle embraces alike those provisions which affect the validity, construction, discharge and enforcement of the contract.'" Majority op. at 146, 957 A.2d at 599 (quoting *Dennis v. Mayor of Rockville*, 286 Md. 184, 189, 406 A.2d 284, 287 (1979)). There is a plethora of Maryland authority of long standing holding that contracting parties implicitly incorporate relevant laws currently existing into their agreements, or at least agree to comply with such laws. *See Dennis*, 286 Md. at 191, 406 A.2d at 288 (holding that a city ordinance requiring property owners to provide purchasers with certain required information, prior to entering a contract of sale, and granting purchasers a right of rescission in the event the information was not supplied, was incorporated into the contract because the ordinance existed at the time the contract was made); *Beca v. Mayor of Balt.*, 279 Md. 177, 182, 367 A.2d 478, 481 (1977) (holding that a police department regulation requiring certain departmental expenses be reimbursed was incorporated into employee's employment contract with the department because the regulation existed at the time the contract was made and was promulgated under the designated authority of the police commissioner); *Fed. Ins. Co. v. Allstate Ins. Co.*, 275 Md. 460, 473–76, 341 A.2d 399, 407–10 (1975) (holding that, because a party to the contract was an automobile shipper authorized by the Interstate Commerce Commission ("ICC") to engage in such business, the contract between the parties incorporated certain ICC restrictions because the restrictions existed at the time the contract was made); *Downing Dev. Corp. v. Brazelton*, 253 Md. 390, 398–99, 252 A.2d 849, 854 (1969) (holding that the statutory requirement that a two-thirds majority of stockholders approve a sale of substantial corporate assets was incorporated into the proposed sale agreement); *Holmes v. Sharretts*, 228 Md. 358, 369, 180 A.2d 302, 306–07 (1962) (holding that, because of the circumstances under which a trust agreement was created and based on the expertise of the persons creating it, the agreement was intended to comply with, and therefore incorporate into its own terms, the ten

year statutory limitation period); *Whitworth v. Dep't of Mental Hygiene*, 222 Md. 98, 104–05, 158 A.2d 765, 768–69 (1960) (holding that a statutory provision entitling the Department of Mental Hygiene to make a claim against the estate of a deceased person, committed to one of its institutions, for past maintenance and support of that person became incorporated into the contract between the deceased's trustees and the County because enactment of the provision preceded the formation of the agreement and was not substantively changed thereafter); *Griffith v. Scheungrab*, 219 Md. 27, 33–34, 146 A.2d 864, 868–69 (1958) (holding that a federal statutory provision requiring certain sellers to provide buyers with a written appraisal of the value of the property was incorporated into the contract between the parties because, judging from the contract terms and circumstances, the parties impliedly intended to comply with the provision). The important point to note from these authorities is that, with regard to contracts, Maryland courts have little difficulty in finding consistently that statutes and regulations existing at the time a contract is formed may be incorporated into and become a part of the terms of that contract.

Considering the obverse, Maryland courts consistently have been unwilling, absent a clear expression to the contrary in the statutory enactment, to find that statutes enacted post-agreement should be deemed incorporated into the pre-existing agreements by implication or legal fiction. Under Maryland law, retrospective application of a statute is not favored, and the general presumption is that all statutes, federal and state, are intended to operate prospectively. *Rigger v. Balt. County*, 269 Md. 306, 310, 305 A.2d 128, 131 (1973) (citing *State Farm Mut. Auto. Ins. Co. v. Hearn*, 242 Md. 575, 219 A.2d 820 (1966)); *Bell v. State*, 236 Md. 356, 204 A.2d 54 (1964); *Gutman v. Safe Deposit & Trust Co.*, 198 Md. 39, 81 A.2d 207 (1951); 2 SUTHERLAND, STATUTORY CONSTRUCTION § 2201 (3d ed.1943). The presumption is rebutted only by a clear expression to the contrary found in the statute or possibly its legislative history. *Rigger*, 269 Md. at 310, 305 A.2d at 131 (citing *Unsatisfied Fund v. Bowman*, 249 Md. 705,

241 A.2d 714 (1968); *State Farm,* 242 Md. 575, 219 A.2d 820; *Bell,* 236 Md. 356, 204 A.2d 54)). " 'It is well settled that a statute will not be given a retrospective operation, unless its words are so clear, strong and imperative in their retrospective expression that no other meaning can be attached to them, or unless the manifest intention of the Legislature could not otherwise be gratified.' " *Rigger,* 269 Md. at 310, 305 A.2d at 131 (quoting *Gutman,* 198 Md. at 43, 81 A.2d at 208). Two compelling examples of the reluctance on the part of Maryland courts in finding retrospective application of a statute to a contract, absent clear statutory language, are the cases of *Rigger v. Balt. County,* 269 Md. 306, 305 A.2d 128 (1973), and *State Farm Mut. Auto. Ins. Co. v. Hearn,* 242 Md. 575, 219 A.2d 820.

In *Rigger,* the pertinent statute voided, on public policy grounds, the inclusion in a lease of provisions exempting landlords from liability for injuries stemming from the landlords' negligence. *Rigger,* 269 Md. at 308, 305 A.2d at 130. The statute in question was enacted by the General Assembly in 1964 and became effective on 1 June of that year. *Rigger,* 269 Md. at 308, 305 A.2d at 130. The lease agreement at issue in *Rigger* was executed on 10 November 1960 and contained the exact type of exculpatory clause the General Assembly intended to prohibit by statute. *Rigger,* 269 Md. at 307, 305 A.2d at 129. On 17 November 1965, a third party suffered personal injuries allegedly caused by a defective condition of a walkway on the landlord's premises. *Rigger,* 269 Md. at 308–09, 305 A.2d at 130. The issue before this Court was whether the statute could be applied retrospectively to the lease agreement executed in 1960. *Rigger,* 269 Md. at 309, 305 A.2d at 131–32.

In holding that the statute could not be applied retrospectively to the lease agreement, this Court found that because the statute lacked a "clear expression of an intent to apply it retrospectively, . . . a retroactive application of the statute to the lease might well raise serious constitutional questions." *Rigger,* 269 Md. at 311, 305 A.2d at 131. In finding that the parties' rights and expectations were created and defined

before the statute was enacted, we held that the determinative event in these circumstances was the execution of the lease, not the happening of the accident. *Rigger*, 269 Md. at 311, 305 A.2d at 131–32. Thus, because the determinative event pre-dated the statute, the statute, lacking clear language to the contrary, could not be applied retrospectively to the lease.

Likewise, in *Hearn* the pertinent statute declared that insurance policies that seek to disclaim motor vehicle liability insurance due to the insured's failure to give the insurer notice may only be given effect if the insurer proves actual prejudice attributable to such failure. *Hearn*, 242 Md. at 581–82, 219 A.2d at 823–24. The statute, by its terms, did not become effective until 1 June 1964. *Hearn*, 242 Md. at 582, 219 A.2d at 824. The insurance policy in the *Hearn* case was issued well before 1 June, and the accident that gave rise to the claim occurred on 3 March 1964. *Hearn*, 242 Md. at 583, 219 A.2d at 824. After the accident occurred, a genuine issue of material fact was generated whether the insured had complied with the policy's notice requirement, and thus whether the insurance company was required to indemnify one of the parties. *Hearn*, 242 Md. at 583–85, 219 A.2d at 824–26. One of the issues this Court addressed on review was the applicability of the statute, postdating both the insurance agreement and the accident, to the insurance policy in question. *Hearn*, 242 Md. at 581–83, 219 A.2d at 823–24.

Emphasizing the principle that all statutes are presumed to operate prospectively unless there is a clear expression to the contrary, the Court held that the statute could not be applied retrospectively to the insurance policy because such application would interfere impermissibly with the insurer's substantive contractual right to deny liability for noncompliance with the notice provision.[1] *Hearn*, 242 Md. at 581–83, 219 A.2d at 823–24. Because this substantive contractual right had ac-

---

1. The Court stated that "[w]e deem it evident that the statute here involved affects substantive rights." *Hearn*, 242 Md. at 582, 219 A.2d at 824. The contractual right to cancel a contract without notice has been held to be a substantive right. *Bitronics Sales Co. v. Microsemiconductor Corp.*, 610 F.Supp. 550 (D.Minn.1985), discussed *infra*.

crued before the statute came into effect, the insurer was entitled to assert the notice requirement as a defense. *Hearn*, 242 Md. at 582–83, 219 A.2d at 824. Thus, *Hearn* stands for the proposition that a post-agreement statute, absent clear language to the contrary, should not be applied to contractual rights that accrue before the effective date of the statute.

## II.

Based on *Rigger* and *Hearn*, it seems clear to me in the present case that if either party's right to terminate the open-ended contract, subject to the 120 day notice period, but without the requisite showing of good cause, accrued or vested before the effective date of the Maryland Legislature's 1998 amendment of the Equipment Dealer Act, the 1998 amendment may not be applied retrospectively to the contract between John Deere and Reliable Tractor.[2] There simply is no Maryland case holding that a statute that otherwise would alter the contractual rights of the parties involved may be applied, without clear retrospective language, to an agreement made before the effective date of the statute. *See generally Dua v. Comcast Cable of Md., Inc.*, 370 Md. 604, 630, 805 A.2d 1061, 1076 (2002) ("In light of this Court's opinions, it is clear that retrospective statutes abrogating vested property rights (including contractual rights) violate the Maryland Constitution."). Thus, the only means by which the statute may be applied to the contract between John Deere and Reliable Tractor is if the parties are deemed to have made a contract

---

2. This conclusion may be drawn because the 1998 statute implementing the change lacks any indication of an intent on the part of the Legislature that the statute be applied retrospectively. Under *State Ethics Comm'n v. Evans*, 382 Md. 370, 855 A.2d 364 (2004), a statute is not to be given retroactive operation "unless its words are so clear, strong and imperative, that no other meaning can be annexed to them, or unless the intention of the Legislature could not be otherwise satisfied." *Evans*, 382 Md. at 383–84, 855 A.2d at 372 (quoting *Williams v. Johnson*, 30 Md. 500, 508 (1869)). 1998 Md. Laws, ch. 333, the statute that implemented the good cause change, merely states, *inter alia*, that it is for the purpose of establishing the good cause standard and is to take effect 1 October 1998, which is insufficient to satisfy the *Evans* standard.

after 1 October 1998, the effective date of the 1998 amend-
ment. 1998 Md. Laws, ch. 333.

To recognize that means, the Majority opinion embraces a
legal fiction that the parties made an agreement post 1
October 1998, dependent on the notion that the contract
between John Deere and Reliable Tractor was an open-ended
contract with a defined notice period for termination. The
Majority theorizes that an open-ended contract with a defined
termination notice period is, in effect, a series of contracts
each lasting only so long as the duration of the notice period.
Majority op. at 152–53, 957 A.2d at 602–03. Reliance on this
tortured fiction is misguided.

## III.

First, the case law support for the Majority's conclusion is
based purely on dicta in two cases and has never been adopted
as a holding by a single court in resolving a similar dispute as
the one in the present case. Second, the Majority opinion's
premise that the failure to cancel an open-ended contract with
a defined termination period, before that defined period runs,
should be considered the same as the two parties making and
agreeing to a new contract for each and every subsequent
notification period, contradicts well-settled precedents that
draw a clear distinction between what is to be considered as
renewal of a contract after the effective date of a statute
purporting to affect the agreement, therefore incorporating
the provisions into the agreement, versus what should be
considered the mere continuation of an agreement pre-dating
the statutory change, and therefore not incorporating the new
law.

## A.

No court has held, until the Majority here, that the continu-
ation of an at-will contract beyond the notice for termination
period is the equivalent of the parties "making" a series of
independent contracts. The two principal cases on which the
Majority opinion rests fail to support its theory of a series of

individual, fictional contracts. In *Northshore Cycles, Inc. v. Yamaha Motor Corp.*, 919 F.2d 1041 (5th Cir.1990), the court considered whether a 1988 statute requiring manufacturers of motorcycles to repurchase inventory from dealers upon cancellation of the dealer agreement applied to a dealer agreement executed in 1984. *Northshore*, 919 F.2d at 1042. Although the court mentioned in dicta that "an open ended dealer agreement which empowers either party to terminate without cause merely by furnishing, say, thirty (30) days' notice to the other party, might be construed as a month-to-month agreement which automatically reconducts itself each month until such notice is furnished by one of the parties," the court actually held that, based upon a review of the agreement between the parties, there was insufficient indicia of any renewal or reconduction of the original 1984 agreement after the 1988 effective date of the statute. *Northshore*, 919 F.2d at 1043. Thus, application of the statute under such circumstances would violate Yamaha's right to constitutional protection against laws impairing the obligations of preexisting contracts. *Northshore*, 919 F.2d at 1044. The other case, *Cloverdale Equip. Co. v. Manitowoc Eng'g Co.*, 964 F.Supp. 1152 (E.D.Mich.1997), *aff'd*, 149 F.3d 1182 (6th Cir.1998), seems included in the Majority opinion simply because the Michigan federal court discussed the *Northshore* opinion, despite the fact that it found, as even the Majority opinion here concedes, that *Northshore* provided no guidance in the holding of the case. *Cloverdale*, 964 F.Supp. at 1161; Majority op. at 150–51, 957 A.2d at 602–03. The *Cloverdale* opinion instead addressed whether a statute should be found applicable to a contract of one year term that expired eight days before the effective date of the statute, yet the parties continued to perform. *Cloverdale*, 964 F.Supp. at 1161–62. Thus, in neither case on which the Majority depends did a court actually adopt as part of the holding the notion that an open-ended contract is really a series of mini-contracts.

### B.

The case law on point draws a clear distinction between continuation versus renewal. In *Bitronics Sales Co. v. Micro-*

*semiconductor Corp.,* 610 F.Supp. 550 (D.Minn.1985), the United States District Court for the District of Minnesota considered whether a regulatory standard, adopted in Minnesota in 1975 [3] and requiring good cause for termination of a franchise agreement, should apply to a franchise agreement, executed in 1970, that permitted termination at will. *Bitronics,* 610 F.Supp. at 555–56. The change was adopted "as remedial legislation designed to protect potential franchises within Minnesota from unfair contracts and other perceived abuses in a growing national franchise industry." *Bitronics,* 610 F.Supp. at 556. Despite the remedial intentions of the legislation, the Minnesota Supreme Court found that, given Minnesota's standard (identical to that of Maryland) of presuming new laws and rules have no retrospective effect unless clearly and manifestly intended by the legislature, the new legislation did not satisfy the clear and manifest standard to give the good cause requirement retroactive effect. *Mason v. Farmers Ins. Cos.,* 281 N.W.2d 344, 348 (Minn.1979). Thus, the only issue confronting the District Court in *Bitronics* was whether the regulatory standard may be incorporated into the parties' agreement by virtue of the nature of the contract itself or the parties' actions thereunder.

In *Bitronics,* the District Court found that the fact that the contract between the parties provided that it was to "commence on the date it is executed and *continue until terminated*" was insufficient alone to deem as incorporated into the agreement the post-agreement regulatory change. *Bitronics,* 610 F.Supp. at 557 (emphasis added). In so finding, the court reasoned:

> Courts have found the retroactivity problem to be avoided where parties entered into negotiations for a new agreement or renewed a contract that terminated on a specific date subsequent to the effective date of the franchise act.

---

**3.** The regulation was promulgated under Minn.Stat. § 80C.01 *et seq* and became effective on 13 January 1975. *Bitronics,* 610 F.Supp. at 556. Minn.Stat. § 80C.14 was amended in 1981 to incorporate this part of the regulation into the statute itself. *Bitronics,* 610 F.Supp. at 556 n. 3.

In these circumstances the parties were making a fresh decision whether to continue the contractual relationship; thus no retroactive application was involved. Minor modifications of prior contracts are not sufficient, however. There must be a significant or material alteration of the relationship between the parties for a new contract to exist which postdates the Act.

*Bitronics,* 610 F.Supp. at 556–57 (internal citations omitted). In *Bitronics,* as in the present case, either party could terminate the contract at will; thus, the parties could be considered to have agreed, as the Majority opinion would have it, to hundreds or thousands of individual daily contracts. *Bitronics,* 610 F.Supp. at 557; Majority op. at 151–53, 957 A.2d at 602–03. Nonetheless, the *Bitronics* court found that the right to terminate the agreement at will, a right agreed upon in the 1970 agreement, was a contractual right that vested prior to the 1975 effective date of the regulation and thus the agreement could not be altered by the subsequently enacted regulation absent clear retrospective language. *Bitronics,* 610 F.Supp. at 556. Thus, the only other basis upon which to apply the post-agreement statute or regulation was whether the parties made the necessary "fresh decision" to continue the contractual relationship under the new statutory or regulatory regime. *See Bitronics,* 610 F.Supp. at 557. Under this fiction, if found to exist, the parties would be deemed to have made the necessary "fresh decision" by either having entered into negotiations for a new agreement after the effective date of the statute or regulation, or renewing a contract that terminated on a specific date subsequent to the effective date of the statute or regulation.[4]

---

4. The *Bitronics* court, in addition, would have considered a significant or material alteration of the agreement between the parties post-dating the effective date of the statute or regulation sufficient to apply the statute or regulation to the agreement because under such circumstances the parties would be deemed to have satisfied the "fresh decision" standard. *See Bitronics,* 610 F.Supp. at 557. This consideration need not be analyzed for the purposes of this case because there is no indication from the facts presented to this Court that the parties modified their 1984 dealer agreements.

The *Bitronics* holding is a well-settled solution to the post-agreement applicability dilemma, as applied by other courts on several other occasions. *See McKay Nissan, Ltd. v. Nissan Motor Corp. in U.S.A.*, 764 F.Supp. 1318, 1320 (N.D.Ill.1991) ("None of the amendments identified by McKay demonstrate that the parties entered into a new agreement. The parties certainly did not renegotiate the terms of the franchise agreement. The amendments, which were administrative in nature, did not change the parties' contractual rights. Nor did the amendments vary the responsibilities and duties of either party. In short, the contractual modifications at issue were too insubstantial to have established a new contract which replaced the original franchise agreement.... The Act may not be imposed to interfere with this previously existing contractual relationship. The parties' rights vested prior to the Act's effective date and, therefore, McKay cannot resort to the Act's provisions for a remedy."); *Rochester v. Royal Appliance Mfg. Co.*, 569 F.Supp. 736, 739 (W.D.Wis.1983) ("It is thus apparent that, as it concerns acts between the effective date of the WFDL (1974) and the 1977 amendments, the acts must satisfy the 'entered into' language of the original WFDL before coverage under the WFDL can be imposed. The parties in this case did not enter into a new dealership agreement when plaintiff relinquished part of his territory. While this change may have been substantial to the plaintiff, it is not equivalent to the kind of changes contemplated by the *Kealey* decision. Rather than making a 'fresh decision' whether to continue plaintiff as a distributor, the parties continued the pre-existing relationship, albeit on a smaller scale."); *Kealey Pharmacy & Home Care Serv., Inc. v. Walgreen Co.*, 539 F.Supp. 1357, 1363 (W.D.Wis.1982) ("When it enacted the Fair Dealership Law in 1974, the legislature intended it to apply to all dealership agreements 'entered into thereafter.' As *Wipperfurth* makes clear, the mere continuance after April 5, 1974 of a dealership arrangement of indefinite duration does not constitute a dealership agreement 'entered into after' that date. Similarly, an automatic renewal contemplated under the terms of a dealership agreement is not an agreement 'entered

into' so as to bring the dealership under the original terms of the Act."), *aff'd,* 761 F.2d 345 (7th Cir.1985) (internal citation omitted); *E.A. Dickinson & Assocs., Inc. v. Simpson Elec. Co.,* 509 F.Supp. 1241, 1247 (E.D.Wis.1981) ("The June 4, 1974, letter was not, however, a new contract or an amendment to the existing contract. It was instead notification of a routine modification in defendant's product line which was available to the plaintiff for promotion. It was anticipated by the parties in 1956 at the time of their oral agreement that such changes would occur from time to time, and in the course of their twenty-five years of dealings a number of such modifications did occur. Each time such a change was made, it did not constitute a renewal or amendment of the contract existing between the parties. Thus, the June 4, 1974, letter does not justify application of Ch. 135 to the relationship between the parties."); *Easterby–Thackston, Inc. v. Chrysler Corp.,* 477 F.Supp. 954, 956 (D.S.C.1979) ("Plaintiff's characterization of the June 1, 1976 activity as constituting a 'new contract,' strains the meaning of that term beyond the limits which this court is willing to project. There was no change in the rights or duties of Easterby–Thackston as a result of Chrysler becoming a party to the contract. Nor was the consent of plaintiff necessary for the substitution of Chrysler as a party. Furthermore, the original contract specifically contemplated this very situation, stating that Chrysler Motors 'may assign this agreement only to Chrysler Corporation.' Since the parties operated exclusively under the terms of the original agreement, as amended prior to passage of this Act, the assumption of this contract by Chrysler, does not constitute a 'new contract.' "); *cf. McKay Nissan,* 764 F.Supp. at 1320 ("A determination that the Act does not apply to the 1979 agreement and amendments does not fully dispose of McKay's complaint, however. The parties entered into a renewal agreement on April 3, 1989, long after the Act (and any relevant amendments) came into effect. Thus, if any of the alleged violations occurred after April 3, 1989, McKay may pursue a claim under the Act because there is no retroactivity problem."); *Phillips Petroleum Co. v. Paradee Oil Co.,* 343

A.2d 610, 611–12 (Del.1975) (holding that contract for one year term made before the effective date of the statute, but subsequently renewed each year by the parties, was sufficient circumstances to subject the contract to the statute).

## IV.

For the reasons stated, I would answer the certified question by adopting the "fresh decision" standard of *Bitronics*. Such a standard does the most justice to the bargains and considerations exchanged between parties at the time of contracting and the objectively-viewed continued expectations of the parties thereafter. Nothing in the Majority opinion or in the briefs of the parties indicates that the agreement between John Deere and Reliable Tractor was based on any understanding other than an open-ended contract terminable at will by either party with 120 days' notice, even after the 1998 good cause for termination standard was enacted. The Legislature has not directed otherwise with clarity. The courts should not alter the vested rights of the parties to an open-ended contract by incorporating post-agreement statutes into the agreements, absent the requisite showing of a "fresh decision." Judges Murphy and Cathell authorize me to state that they join this dissenting opinion.